1  STEVEN T. GUBNER – Bar No. 156593
   TALIN KESHISHIAN – Bar No. 201830
2  TRAVIS M. DANIELS – Bar No. 295855
   **EZRA BRUTZKUS GUBNER LLP**
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA  91367
4  Telephone:  818-827-9000
   Facsimile:   818-827-9099
5  Emails:     sgubner@ebg-law.com
                tkeshishian@ebg-law.com
6               tdaniels@ebg-law.com

7  Attorneys for Plaintiff, Howard M. Ehrenberg, Chapter 7 Trustee

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                 **LOS ANGELES DIVISION**

12 | In re | Case No. 2:14-bk-24788-BR |
|---|---|
13 | MIKE VAHE THOMASSIAN and MAGDA THOMASSIAN, | Chapter 7 |
14 | | Adv. No. |
15 | Debtors. | |

16 | HOWARD M. EHRENBERG, Chapter 7 Trustee, | **COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS [11 U.S.C. §§ 502, 548(a)(1)(A) and (B), and 550(a)(1) and (2)].** |
|---|---|
17 | | |
   |               Plaintiff, | |
18 | vs. | |
19 | ARA THOMASSIAN as Trustee of the Mike V. Thomassian Qualified Personal Residence Trust; and TALIN THOMASSIAN as Trustee of the Magda Thomassian Qualified Personal Residence Trust, | Status Conference: |
20 | | **Date:**   [To be set by Court] |
21 | | **Time:** |
   | | **Place:**  Courtroom 1668 |
22 | | United States Bankruptcy Court |
   |               Defendants. | 255 East Temple Street |
23 | | Los Angeles, CA  90012 |

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1210516

1    Plaintiff, Howard M. Ehrenberg, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate

2    (the "Estate") of debtors Mike and Magda Thomassian (the "Debtors"), complaining of defendants

3    Ara Thomassian ("ARA"), the trustee of the Mike V. Thomassian Qualified Personal Residence

4    Trust ("MIKEQPRT"), and Talin Thomassian ("TALIN"), the trustee of the Magda Thomassian

5    Qualified Personal Residence Trust ("MAGQPRT") (Defendant ARA and Defendant TALIN are

6    collectively referred to as the "Defendants"), alleges as follows:

7    **NATURE OF ACTION**

8    1.    This is an adversary proceeding brought pursuant to Part VII of the Federal Rules of

9    Bankruptcy Procedure to recover certain transfers made by the Debtors to the Defendants and related

10    relief. The Trustee seeks entry of a judgment avoiding the transfer at issue pursuant to 11 U.S.C. §

11    548 and recovering the transfer pursuant to 11 U.S.C. § 550, and disallowing any claim of the

12    Defendants, including pursuant to 11 U.S.C. § 502(d), until Defendant pays the transfers at issue in

13    full to the Trustee.

14    2.    To the extent any of the Defendants has filed a proof of claim or has a claim listed on

15    the Debtor's schedules as undisputed, liquidated, or non-contingent, or has otherwise requested

16    payment from Debtor (collectively, the "Claims"), this Complaint is not intended to be, nor should it

17    be, construed as a waiver of the Trustee's right to object to such Claims for any reason including, but

18    not limited to, any grounds set forth in § 502(a) through (j) ("§ 502") of Title 11 of the United States

19    Code (the "Bankruptcy Code"), and such rights are expressly reserved. Notwithstanding the

20    reservation of rights set forth above, certain relief pursuant to § 502 is sought by the Trustee herein

21    as further stated below.

22    **STATEMENT OF JURISDICTION AND PROCEEDINGS**

23    3.    On or about August 1, 2014 (the "Petition Date"), the Debtors filed a voluntary petition

24    for relief under Chapter 7 of the Bankruptcy Code. Shortly thereafter, Howard M. Ehrenberg was

25    appointed as Chapter 7 Trustee, and continues to serve in that capacity. Pursuant to the Trustee's

26    appointment as Chapter 7 Trustee, he has standing to bring this adversary proceeding on behalf of

27    the Estate.

28    / / /

2

1210516

4.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a), as this is a core proceeding under 28 U.S.C. §§ 157(b)(1), (2)(B) and (2)(H).

5.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a), in that the instant proceeding is related to the Debtors' case under Title 11, Chapter 7 of the Bankruptcy Code, which is still pending.

6.     The Trustee consents to final order or judgment by the Bankruptcy Court.

## THE PARTIES

7.     The Trustee brings this action solely in his capacity as the Chapter 7 Trustee for the Debtors' Estate.

8.     The Trustee is informed and believes, and based thereon alleges, that Mike V. Thomassian is, and was at all times material hereto, married to Magda Thomassian.

9.     The Trustee is informed and believes, and based thereon alleges, that the MIKEQPRT is a qualified personal residence trust, created on or about March 11, 2013, under the laws of the State of California.

10.    The Trustee is informed and believes, and based thereon alleges, that Defendant ARA is an individual who resides in the State of California and, as of March 11, 2013, is the appointed and acting trustee of the MIKEQPRT.

11.    The Trustee is informed and believes, and based thereon alleges, that the MAGQPRT is a qualified personal residence trust, created on or about March 11, 2013, under the laws of the State of California.

12.    The Trustee is informed and believes, and based thereon alleges, that Defendant TALIN is an individual who resides in the State of California and, as of March 11, 2013, is the appointed and acting trustee of the MAGQPRT.

13.    The Trustee is informed and believes and based thereon alleges, that Defendant TALIN is the Debtors' daughter.

14.    The Trustee is informed and believes and based thereon alleges, that Defendant ARA is the Debtors' son.

/ / /

1210516

## GENERAL ALLEGATIONS

15.  The Trustee is informed and believes that prior to the Petition Date, the Debtors owned a company entitled National Fire Systems and Services ("NFSS"), which provided electrical contracting and low voltage fire alarm installation to commercial shopping centers, high rises, and multi-unit residential and low-income housing.

16.  The Trustee is informed and believes that at some point in July of 2010, NFSS was engaged in discussions to start a new company entitled Mahel Development Inc. ("MDI"), which would specialize in developing low-income housing projects ("MDI Project").

17.  The Trustee is informed and believes that prior to the MDI Project, the Debtors and/or NFSS obtained numerous lines of credit ("Credit Lines") from Citibank N.A. ("Citibank") between the years 2007 to 2010.

18.  The Trustee is informed and believes that in connection with the MDI Project, NFSS drew on the Credit Lines and made a loan to MDI in the amount of $1,800,000.00 (the "Loan").

19.  The Trustee is also informed and believes that the Debtors personally guaranteed financial responsibility for any amount drawn on the Credit Lines (the "Personal Guaranty").

20.  The Trustee is informed and believes that on or about April 18, 2012, First Southwestern Financial Services, LLC ("Southwestern") obtained the rights to the notes on the Credit Lines and the Personal Guaranty by virtue of an assignment agreement between Southwestern and Citibank.

21.  The Trustee is informed and believes that for various reasons, the MDI Project failed and the Loan from NFSS was not repaid to NFSS and/or the Debtors. In December of 2010, NFSS filed suit against MDI and others to recover sums due under its Loan ("NFSS Lawsuit").

22.  On or about June 3, 2013, Southwestern brought suit against NFSS and the Debtors, among others, to recover the amount NFSS and/or the Debtors drew on the Credit Lines, plus interest, all of which the Debtors had personally guaranteed ("Southwestern Lawsuit").[1]

23.  The Trustee is informed and believes that on or about June 5, 2013, approximately 2 days after the Southwestern Lawsuit was filed, NFSS filed for bankruptcy in the United States

---

[1] The Southwestern Lawsuit was filed on June 3, 2013 in the Superior Court of California, Los Angeles County, Northern Central Judicial District (Case No. EC060757).

1    Bankruptcy Court for the Central District of California (Case No. 2:13-bk-24853-ER).

2        24.   The Trustee is informed and believes that the amount drawn on the Credit Lines, which

3    the Debtors had guaranteed, is between $1 million and $1.8 million.

4        25.   Shortly before the Southwestern Lawsuit was filed, on or about March 11, 2013, the

5    Debtors each created separate qualified personal residence trusts ("QPRT's"), appointing their two

6    children as the trustee of each QPRT, as alleged hereinabove and herein below.

7        26.   Debtor Mike Thomassian created the MIKEQPRT, naming his son ARA as the trustee.

8    Trustee is informed and believes, and based thereon alleges that the MIKEQPRT was an irrevocable

9    trust. A true and correct copy of the MIKEQPRT is attached hereto as **Exhibit "A."**

10        27.   Debtor Magda Thomassian created the MAGQPRT, naming her daughter TALIN as the

11    trustee. Trustee is informed and believes, and based thereon alleges that the MAGQPRT was an

12    irrevocable trust. A true and correct copy of the MAGQPRT is attached hereto as **Exhibit "B."**

13        28.   Trustee is informed and believes, and based thereon alleges, that prior to June 17, 2013,

14    Mike V. Thomassian and Magda Thomassian, as husband and wife, owned the residence commonly

15    referred to as 5725 Ocean View Blvd., La Canada, CA 91011, whose legal description is recorded in

16    the Office of the Los Angeles County Recorder as "Lot 53 of Tract 24112 in the City of La Canada

17    Flintridge, County of Los Angeles, State of California, as per map recorded in book 677, pages 77 to

18    79 inclusive of Maps, in the Office of the County Recorder of said County (the "Residence").

19        29.   In accordance with **Exhibit "A,"** on June 17, 2013, approximately two weeks after the

20    Southwestern Lawsuit was filed against the Debtors, Debtor Mike Thomassian, as grantor, executed

21    a quit claim deed conveying his fifty percent (50%) interest and title to the Residence to the

22    MIKEQPRT, as grantee. ARA was the Trustee of the MIKEQPRT at the time of the transfer. A true

23    and correct copy of the quit claim deed from Mike V. Thomassian to the MIKEQPRT, recorded on

24    June 17, 2013 in the Office of the Los Angeles County Recorder as Instrument 20130900457, is

25    marked as **Exhibit "C"** and is attached hereto and incorporated herein by reference. The transfer

26    from Mike V. Thomassian to the MIKEQPRT is hereafter referred to as the "Mike Transfer".

27        30.   In accordance with **Exhibit "B,"** on June 17, 2013, approximately two weeks after the

28    Southwestern Lawsuit was filed, Debtor Magda Thomassian, as grantor, executed a quit claim deed

1   conveying her fifty percent (50%) interest and title to the Residence to the MAGQPRT, as grantee.

2   TALIN was the Trustee of the MAGQPRT at the time of the transfer. A true and correct copy of the

3   quit claim deed from Magda Thomassian to the MAGQPRT, recorded on June 17, 2013 in the Office

4   of the Los Angeles County Recorder as Instrument 20130900458, is marked as **Exhibit "D"** and is

5   attached hereto and incorporated herein by reference. The transfer from Magda Thomassian to the

6   MAGQPRT is hereafter referred to as the "Magda Transfer" and together with the Mike Transfer,

7   the "Transfers."

8        31.   Pursuant to **Exhibit "A"** and **Exhibit "B,"** the Debtors retained a life estate interest in

9   the Residence. Further, the Transfers also provide that after 20 years from creation of the trusts or

10   upon the death of the Debtor creating the trust, whichever shall occur first, the trust will terminate

11   and the trust property will be transferred to either the surviving spouse, or in equal shares to the

12   Debtors' children.

13        32.   The Trustee is informed and believes, and based thereon alleges, that ARA is also the

14   direct and intended beneficiary of the transfer to the MIKEQPRT, as listed in **Exhibit "A"** and

15   **Exhibit "C"**.

16        33.   The Trustee is informed and believes, and based thereon alleges, that TALIN is also the

17   direct and intended beneficiary of the transfer to the MAGQPRT, as listed in **Exhibit "B"** and

18   **Exhibit "D"**.

19        34.   The Trustee is informed and believes, and based thereon alleges, that the Mike Transfer

20   was made for no valuable consideration.

21        35.   The Trustee is informed and believes, and based thereon alleges, that the Magda

22   Transfer was made for no valuable consideration.

23        36.   The Trustee is informed and believes, and based thereon alleges, that at the time the

24   Transfers were made, the Debtors' Residence had considerable equity, having a value of

25   approximately $850,000.00 and mortgage liens of approximately $220,000.00.

26        37.   The Trustee is informed and believes, and based thereon alleges, that the Debtors,

27   individually, and through the entity they owned and/or controlled directly and indirectly, were

28   indebted to Citibank and/or Southwestern, in connection with their Personal Guaranty on the Loan.

1210516

38.     The Trustee is further informed and believes and thereon alleges that the Debtors knew or had reason to believe that Citibank and/or Southwestern would pursue legal action against NFSS and the Debtors to recover the indebtedness owed to them, and therefore, created the QPRTs. Thereafter, when the Southwester Lawsuit was filed against the Debtors, the Debtors executed the grant deeds, **Exhibits "A"** and **"B,"** transferring their interests in the Residence to the QPRT's, appointing their two children as the trustee of each QPRT.

39.     The Trustee is informed and believes, and based thereon alleges, that, based on the foregoing acts and actions, the Debtors made these Transfers and acted with actual intent to hinder, delay, or defraud their creditors, namely Citibank and/or Southwestern.

40.     The Trustee is informed and believes, and based thereon alleges, that the Debtors made the Transfers to their respective QPRT trusts in an effort to protect and conceal the Residence from their creditors.

## FIRST CLAIM FOR RELIEF

### AVOIDANCE OF FRAUDULENT TRANSFER AGAINST ARA (ACTUAL INTENT)

### [11 U.S.C. § 548(a)(1)(A)]

41.     The Trustee repeats and alleges the allegations in above paragraphs 1 through 40, inclusive, as though fully set forth herein.

42.     The Trustee is informed and believes and thereon alleges that during the two year period immediately preceding the Petition Date, on or about March 11, 2013, Debtor Mike V. Thomassian transferred his fifty percent interest in the Residence, as set forth in **Exhibit "C"** attached hereto and incorporated by this reference, to the MIKEQPRT, with the actual intent to delay, hinder or defraud the Debtors' creditors.

43.     By reason of the foregoing, the Mike Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

/ / /

/ / /

/ / /

/ / /

1210516

## SECOND CLAIM FOR RELIEF

**AVOIDANCE OF FRAUDULENT TRANSFER AGAINST TALIN (ACTUAL INTENT)**

**[11 U.S.C. § 548(a)(1)(A)]**

44.    The Trustee repeats and alleges the allegations in above paragraphs 1 through 40, inclusive, as though fully set forth herein.

45.    The Trustee is informed and believes and thereon alleges that during the two year period immediately preceding the Petition Date, on or about March 11, 2013, Debtor Magda Thomassian transferred her fifty percent interest in the Residence, as set forth in **Exhibit "D"** attached hereto and incorporated by this reference, to the MAGQPRT, with the actual intent to delay, hinder or defraud the Debtors' creditors.

46.    By reason of the foregoing, the Magda Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

## THIRD CLAIM FOR RELIEF

**AVOIDANCE OF FRAUDULENT TRANSFER AGAINST ARA**

**(CONSTRUCTIVE INTENT)**

**[11 U.S.C. § 548(a)(1)(B)]**

47.    The Trustee repeats and alleges the allegations in above paragraphs 1 through 43, inclusive, as though fully set forth herein.

48.    The Trustee is informed and believes and thereon alleges that the Mike Transfer was made without Debtor Mike V. Thomassian receiving a reasonably equivalent value in exchange for such transfer, and: (i) at a time when the Debtors were insolvent or as a result of which, the Debtors became insolvent; or (ii) at a time when the Debtors were engaged in a business or a transaction, or were about to engage in a business transaction, for which any property remaining with the Debtors was unreasonably small capital; or (iii) at a time when the Debtors intended to incur, or believed or should reasonably have believed  that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

49.    By virtue of the foregoing, the Mike Transfer constituted a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

1210516

**FOURTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFER AGAINST TALIN**

**(CONSTRUCTIVE INTENT)**

**[11 U.S.C. § 548(a)(1)(B)]**

50.    The Trustee repeats and alleges the allegations in above paragraphs 1 through 40 and 44-46, inclusive, as though fully set forth herein.

51.    The Trustee is informed and believes and thereon alleges that the Magda Transfer was made without Debtor Magda Thomassian receiving a reasonably equivalent value in exchange for such transfer, and: (i) at a time when the Debtors were insolvent or as a result of which, the Debtors became insolvent; or (ii) at a time when the Debtors were engaged in a business or a transaction, or were about to engage in a business transaction, for which any property remaining with the Debtors was unreasonably small capital; or (iii) at a time when the Debtors intended to incur, or believed or should reasonably have believed  that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

52.    By virtue of the foregoing, the Magda Transfer constituted a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

**FIFTH CLAIM FOR RELIEF**

**RECOVERY OF AVOIDED TRANSFERS AGAINST ARA**

**[11 U.S.C. § 550(a)(1) and (2)]**

53.    The Trustee realleges each and every allegation contained in paragraphs 1 through 43 and 47-49, of this Complaint and by this reference, incorporates said allegations as though set fully herein.

54.    By reason of the foregoing, the Trustee is entitled to recover for the benefit of the Estate the Mike Transfer from ARA, pursuant to 11 U.S.C. § 550(a).

**SIXTH CLAIM FOR RELIEF**

**RECOVERY OF AVOIDED TRANSFERS AGAINST TALIN**

**[11 U.S.C. § 550(a)(1) and (2)]**

55.    The Trustee realleges each and every allegation contained in paragraphs 1 through 40,

1210516

44-46 and 50-52, of this Complaint and by this reference, incorporates said allegations as though set fully herein.

56.    By reason of the foregoing, the Trustee is entitled to recover for the benefit of the Estate the Magda Transfer from TALIN, pursuant to 11 U.S.C. § 550(a).

## SEVENTH CLAIM FOR RELIEF

### CLAIM DISALLOWANCE AGAINST ARA

### [11 U.S.C. § 502]

57.    The Trustee realleges each and every allegation contained in paragraphs 1 through 43, 47-49 and 53-54, of this Complaint and by this reference, incorporates said allegations as though set forth fully herein.

58.    ARA is a transferee of a transfer avoidable under § 548 of the Bankruptcy Code and accordingly, the Trustee is entitled to recover the property from ARA under § 550 of the Bankruptcy Code.

59.    ARA has not paid the amount of the transfer for which he is liable under § 550 of the Bankruptcy Code.

60.    Pursuant to 11 U.S.C. § 502(d), any and all Claims of ARA against the Trustee and/or the Debtors' Estate must be disallowed until such time as ARA has either: (a) returned title to the Residence back to the Estate; or (b) has paid the Trustee an amount equal to the aggregate amount of the Mike Transfer, plus interest thereon and costs.

61.    Pursuant to 11 U.S.C. § 502(j), any and all Claims of ARA, and/or his assignees, against the Trustee and/or the Debtors' Estate previously allowed by the Debtor or the Trustee, must be reconsidered and disallowed until such time as ARA has either: (a) returned title to the Residence back to the Estate; or (b) has paid the Trustee an amount equal to the aggregate amount of the Mike Transfer, plus interest thereon and costs.

/ / /

/ / /

/ / /

/ / /

1210516

## EIGHTH CLAIM FOR RELIEF

### CLAIM DISALLOWANCE AGAINST TALIN

### [11 U.S.C. § 502]

62.    The Trustee realleges each and every allegation contained in paragraphs 1 through 40, 44-46, 50-52 and 55-56, of this Complaint and by this reference, incorporates said allegations as though fully set forth herein.

63.    TALIN is a transferee of a transfer avoidable under § 548 of the Bankruptcy Code and accordingly, the Trustee is entitled to recover the property from TALIN under § 550 of the Bankruptcy Code.

64.    TALIN has not paid the amount of the transfer for which she is liable under § 550 of the Bankruptcy Code.

65.    Pursuant to 11 U.S.C. § 502(d), any and all Claims of TALIN against the Trustee and/or the Debtors' Estate must be disallowed until such time as TALIN has either: (a) returned title to the Residence back to the Estate; or (b) has paid the Trustee an amount equal to the aggregate amount of the Magda Transfer, plus interest thereon and costs.

66.    Pursuant to 11 U.S.C. § 502(j), any and all Claims of TALIN, and/or her assignees, against the Trustee and/or the Debtors' Estate previously allowed by the Debtor or the Trustee, must be reconsidered and disallowed until such time as TALIN has either: (a) returned title to the Residence back to the Estate; or (b) has paid the Trustee an amount equal to the aggregate amount of the Magda Transfer, plus interest thereon and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** the Trustee respectfully prays for judgment against the Defendants as follows:

1.    On the first claim for relief, that the Mike Transfer be avoided for the benefit of the Estate;

2.    On the second claim for relief, that the Magda Transfer be avoided for the benefit of the Estate;

/ / /

1210516

3.    On the third claim for relief, that the Mike Transfer be avoided for the benefit of the Estate;

4.    On the fourth claim for relief, that the Magda Transfer be avoided for the benefit of the Estate;

5.    On the fifth claim for relief, for relief as follows:

    a.    To recover from ARA title to the Residence transferred as part of the Mike Transfer and return said title to the Debtors' Estate; or

    b.    To recover the value of the Mike Transfer from ARA, for the benefit of the Estate, in an amount to be established by proof at trial, plus interest at the maximum legal rate from the date of the Mike Transfer, or such other amount as shall be shown by proof at trial;

6.    On the sixth claim for relief, for relief as follows:

    a.    To recover from TALIN title to the Residence transferred as part of the Magda Transfer and return said title to the Debtors' Estate; or

    b.    To recover the value of the Magda Transfer from TALIN, for the benefit of the Estate, in an amount to be established by proof at trial, plus interest at the maximum legal rate from the date of the Magda Transfer, or such other amount as shall be shown by proof at trial;

7.    On the seventh claim for relief, for disallowance of ARA's Claims against the Trustee and/or the Debtors' Estate;

8.    On the eighth claim for relief, for disallowance of TALIN's Claims against the Trustee and/or the Debtors' Estate;

9.    On all claims for relief, that the Trustee be awarded costs incurred in connection with this action; and

/ / /

/ / /

/ / /

/ / /

1210516

1       10.   For such other and further relief as this Court deems just and proper.

2

3  Dated: February 12, 2015                 EZRA BRUTZKUS GUBNER LLP

4

5                                             By _____

6                                              STEVEN T. GUBNER
                                            TALIN KESHISHIAN

7                                            TRAVIS M. DANIELS
                      Attorneys for Howard M. Ehrenberg,

8                        Chapter 7 Trustee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1210516

# EXHIBIT "A"

# MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

THIS AGREEMENT, dated March 11, 2013, between MIKE V. THOMASSIAN of 5725 Ocean View Blvd., La Canada, California 91011 (hereinafter called the "Grantor"), and ARA THOMASSIAN of La Crescenta, California (hereinafter called the "Trustee").

I certify that I was born on February 2, 1948. My spouse is Magda Thomassian. My two (2) children now living are:

Talin Thomassian, female, born on September 4, 1978; and
Ara Thomassian, male, born on September 7, 1982.

## ARTICLE I. General Provisions

1. **Irrevocable.** This instrument and the trusts it establishes are irrevocable and, Article VI, Section 1 is not subject to amendment or modification in any manner.

2. **Restrictions.** Notwithstanding any other provision (a) assuming that a trust terminates pursuant to Article II, Section 4(a) or Article III, Section 5(a) below, neither I nor any other person shall have any power or right the possession of which would result in the inclusion of any asset of such trust in my gross estate pursuant to any of sections 2033 through 2042 of the Code; and (b) neither I nor any other person shall have any power or right the possession of which would result in the inclusion of any asset of the Family Trust in my gross estate or the gross estate of my spouse pursuant to any of sections 2033 through 2042 of the Code.

## ARTICLE II. Qualified Personal Residence Trust

1. **Purpose.** I intend the Residence Trust to constitute a Qualified Personal Residence Trust pursuant to the Regulations under section 2702(a)(3)(A)(ii) of the Code and all terms used herein and not defined herein shall have the same meaning in this instrument as they do in the Code and in the Regulations. No provision of this instrument shall be construed to cause the Residence Trust to fail to comply with the Regulations governing Qualified Personal Residence Trusts.

2. **Use of Property.** While a residence is held by the Residence Trust (a) the Residence shall be available for my use at all times, and the Trustee shall permit me at all times to use the Residence as my personal residence without rent or other charge; and (b) the Trustee shall permit another to use, occupy, or rent the Residence only if such use, occupancy, or rental would not disqualify the

MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

Residence as a Qualified Residence and would not conflict with my use of the Residence.

3. **Distribution of Income.** The Trustee shall distribute to me all the net income of the Residence Trust in convenient installments not less often than quarterly. All income of the Residence Trust accrued or undistributed at the termination of such trust shall be distributed to me, if then living, otherwise to my estate.

4. **Termination.** The Residence Trust shall terminate, to the extent not previously terminated pursuant to Section 6, upon the Termination Date, which is the date of the first to occur of the following events:

   a. The  20th anniversary of the date of this instrument;

   b. My death.

5. **Distribution of Assets at Termination.**

   a. If the Residence Trust terminates pursuant to Section 4(a), the Trustee shall distribute the remaining principal of the Residence Trust (i) if my spouse is then living and is then legally married to and not legally separated from me, to the Trustee to hold as the principal of the Family Trust pursuant to the terms of Article IV, for the benefit of my spouse (the "primary beneficiary") and my family; (ii) otherwise, in equal shares to such of my children as are then living, or if no child of mine is then living, to my then living descendants in shares *per stirpes.*

   b. If the Residence Trust terminates by reason of my death, the Trustee shall distribute the remaining principal of the Residence Trust to my estate.

6. **Conversion to Grantor Retained Annuity Trust.** If a Conversion Date occurs on or prior to the Termination Date, the Residence Trust will cease to be a Qualified Personal Residence Trust with respect to the Nonqualifying Assets, if any, and on or before the 30th day after the Conversion Date the Trustee shall create a separate Grantor Retained Annuity Trust under Article III ("Annuity Trust") and distribute the Nonqualifying Assets to such Annuity Trust, which shall make annuity payments as provided in Article III retroactive to the Cessation Date. To the extent Residence Trust assets are distributed to an Annuity Trust, the Residence Trust shall thereupon terminate.

7. **Conversion Dates and Nonqualifying Assets.**

   (a) **Sale of Residence.** If the Residence is sold prior to the Termination Date, the Conversion Date is the earliest of: (1) the second anniversary of the date of sale; (2) the date on which a new Residence is acquired by the Residence Trust; and (3) the Termination Date, and the Nonqualifying Assets are all proceeds of sale held by the Residence Trust on the earliest of: (1) such anniversary; (2) the instant immediately after the acquisition of such new Residence; and (3) the Termination Date. The date of sale shall be the Cessation Date.

Page **2** of 16

# MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

(b) **Damage to or Destruction of Residence.** If damage or destruction renders the Residence unusable as residence prior to the Termination Date, the Conversion Date is the earlier of: (1) the second anniversary of the date of the damage or destruction; and (2) the Termination Date, and the Nonqualifying Assets are all assets unless prior to the Conversion Date replacement of or repairs to the Residence are completed or a new Residence is acquired by the Residence Trust in which case the Nonqualifying Assets, if any, shall be determined under Subsection (c). The date of the damage or destruction shall be the Cessation Date.

(c) **Insurance Proceeds.** If the Residence Trust receives insurance proceeds as a result of damage to or destruction of the Residence occurring prior to the Termination Date, the Conversion Date is the earliest of: (1) the second anniversary of the date of the damage or destruction; (2) the date on which a new Residence is acquired by the Residence Trust; (3) the date on which replacement of or repairs to the Residence are completed; and (4) the Termination Date, and the Nonqualifying Assets are all such insurance proceeds held by the Residence Trust on the earliest of: (1) such anniversary; (2) the instant immediately after the acquisition of such new Residence; (3) the instant immediately after such replacement or repairs are completed; and (4) the Termination Date. The date of the damage or destruction shall be the Cessation Date.

(d) **Involuntary Conversion of Residence.** If the Residence Trust receives any amounts as a result of an involuntary conversion (within the meaning of section 1033 of the Code) of the Residence prior to the Termination Date, the Conversion Date is the earliest of: (1) the second anniversary of such involuntary conversion; (2) the date on which a new Residence is acquired by the Residence Trust; and (3) the Termination Date, and the Nonqualifying Assets are all such amounts held by the Residence Trust on the earliest of: (1) such anniversary; (2) the instant immediately after the acquisition of such new Residence; and (3) the Termination Date. The date of such involuntary conversion shall be the Cessation Date.

(e) **Nonqualified Use of Residence.** If by reason other than sale of the Residence, damage to or destruction of the Residence that renders it unusable as a residence, or involuntary conversion (within the meaning of section 1033 of the Code) of the Residence, the Residence Trust ceases to hold a Qualified Residence, the Cessation Date and the Conversion Date shall be such date and the Nonqualifying Assets shall be all trust assets.

8. **Restrictions.**

(a) **Commutation.** My interest in the Residence Trust may not be commuted.

(b) **Principal Distributions.** Except as provided in Section 6, prior to the Termination Date no principal of the Residence Trust shall be distributed to any person other than me.

9. **Maintenance of Property.** During the term of the Residence Trust, I shall be responsible for the payment of real estate taxes, maintenance expenses, utility bills, costs of property insurance for the Residence, and other expenses attributable to a life tenant under applicable state law. To the extent that the

# MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

Trustee pays such expenses from the Residence Trust funds, the Trustee shall have a right to reimbursement from my estate. The Trustee shall pay all other expenses of the Residence Trust from the Residence Trust funds, including any rental income received by the Trustee. In addition, to the extent that I pay for any improvements to the Residence or for any other expense attributable to a remainder beneficiary under applicable state law, I shall have a right of reimbursement from the remainder beneficiaries unless I waive such right in writing. Improvements may be made to the Residence provided that, as improved, the Residence will be a Personal Residence.

10. **Additions to the Residence Trust.** The Trustee of the Residence Trust may not accept additional assets transferred to the Trustee, except that the Trustee may from time to time accept and shall hold in a separate account additional cash transferred by me provided that such cash, when added to the cash already held in such account, does not exceed the amount required for (a) payment of trust expenses, including but not limited to mortgage payments, taxes, insurance premiums, and maintenance costs already incurred or reasonably expected to be paid by the Residence Trust within six months of the date on which such cash is first held, (b) improvements to the residence to be paid by the Residence Trust within six months of the date on which such cash is first held and (c) the purchase of a Residence to replace the Residence held by the Residence Trust within three months of the date the cash is added to the trust if prior to the date of the addition the Trustee has entered into a contract for the purchase of such residence.

11. **Trust Assets.** The Trustee may hold as part of the Residence Trust only the following assets:

   a. One residence to be used or held for use as a personal residence of the term holder, which may be a principal residence, one other residence meeting the requirements of section 280A(d)(1) disregarding section 280A(d)(2), or a fractional interest in either (section 25.2702-5(c)(2) & (5)).

   b. Cash added to the Residence Trust pursuant to the preceding Section, but the Trustee must, not less frequently than quarterly, distribute to me any such cash in excess of the amounts permitted under the preceding Section. Notwithstanding any other provision, upon termination of the Residence Trust any such cash that is not used to pay trust expenses due and payable on the date of termination (including expenses directly related to termination), shall be distributed to me, if I am living, otherwise to my estate.

   c. Any proceeds from the sale of a Residence held by the Residence Trust (including any income thereon) for a period not to exceed two years from the date of sale, provided such proceeds are held in a separate account.

   d. The proceeds of any insurance paid to the Residence Trust as a result of the damage to or destruction of the Residence and any amounts received upon an involuntary conversion (within the meaning of section 1033 of the Code) of the Residence (including any income thereon) for a period not to exceed two years, provided such proceeds or amounts are held in a separate account.

   e. Policies of insurance on the Residence.

12. **Sale of Residence.** Notwithstanding any provision of this trust agreement to the contrary, and to the extent required by the Internal Revenue Code and all

# MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

applicable regulations, trustee shall not sell or transfer any residence property which is an asset of the trust directly or indirectly to the Grantor, Grantor's spouse or to an entity which is directly or indirectly controlled by the Grantor or Grantor's spouse, or to a grantor trust created by the Grantor or Grantor's spouse within the meaning of section 671-677 of the Internal Revenue Code during the term of years stated in Article II of this agreement, or at any time after the expiration of such term that said trust is a grantor trust.

### ARTICLE III. Grantor Retained Annuity Trust

1. **Annuity Trust.** Any assets of the Residence Trust that are to be distributed to an Annuity Trust under this Article shall be held in a separate Annuity Trust pursuant to the terms of the Article and shall not be added to the principal of any Annuity Trust then in existence. I intend that each Annuity Trust be a qualified Grantor Retained Annuity Trust as defined in the Regulations under section 2702 of the Code and my interest therein shall constitute a "qualified annuity interest" as that term is defined in section 25.2702-5(c)(8)(ii) of the Regulations. The Trustee of an Annuity Trust may not accept additional assets transferred to the Trust.

2. **Payment of Annuity.** For each taxable year the Trustee shall pay to me from each Annuity Trust an "Annuity Amount" which shall be equal to the smallest amount permitted under section 25.2702-5(c)(8) of the Regulations or other applicable Regulations under the Code. The Annuity Amount shall be paid in equal quarterly installments at the end of each quarter from income of the Annuity Trust and, to the extent income is insufficient, from principal of the Annuity Trust. Any income of the Annuity Trust not distributed to me as part of the Annuity Amount shall be added to principal. The trustee shall prorate the Annuity Amount on a daily basis for any short taxable year and for the taxable year of my death if an Annuity Trust terminates by reason of my death. The Trustee shall make annuity payments retroactive to the Cessation Date for that Annuity Trust, including interest on any retroactive payments compounded annually calculated at the rate in effect under section 7520 of the Code on the Cessation Date, no later than the date the first current annuity payment is made.

3. **Adjustment for Incorrect Valuation.** If an Annuity Amount is incorrectly determined by the Trustee, including but not limited to by reason of an incorrect valuation of the trust assets or any trust interest, then within a reasonable period of time after the final determination of the correct Annuity Amount, the Trustee shall pay to me, if the Annuity Amount paid was too low, or I shall pay to the Trustee, if the Annuity Amount paid was too large, an amount equal to the difference between each annuity installment previously made from such Annuity Trust, and the annuity installment that should have been made based on the Annuity Amount properly payable, plus interest on such amount computed at the rate required by the applicable Regulations, or if there are no such Regulations, at the rate used for valuing annuity interests under section 664 of the Code, compounded annually.

4. **Restrictions.**

MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

(a) **Commutation.** My interest in an Annuity Trust may not be commuted.

(b) **Trust Distributions.** Prior to the termination of an Annuity Trust, no income or principal of such Annuity Trust shall be distributed to any person other than me.

5. **Termination.** Each Annuity Trust shall terminate upon the first to occur of the following events:

a. The 20th anniversary of the date of this instrument;

b. My death.

6. **Distribution of Assets at Termination.** On the termination of an Annuity Trust pursuant to Section 5, the Trustee, after paying a final annuity installment for a period ending on the date of termination, shall distribute the remaining Annuity Trust assets as follows:

a. If an Annuity Trust terminates on the 20th anniversary of the date of this instrument, the Trustee shall distribute the assets as follows: (i) if my spouse is then living and is then legally married to and not legally separated from me, to the Trustee to hold as the principal of the Family Trust, pursuant to the provisions of Article IV, for the benefit of my spouse (the "primary beneficiary") and my family; (ii) otherwise, in equal shares to such of my children as are then living, or if no child of mine is then living, to my then living descendants in shares *per stirpes.*

b. If an Annuity Trust terminates by reason of my death, the Trustee shall distribute the assets to my estate.

ARTICLE IV. Family Trust

1. **Purpose.** The Trustee shall hold any assets given to the Family Trust for the benefit of my spouse (the "primary beneficiary") and my family.

2. **Discretionary Distributions.** The Trustee may distribute any part or all of the net income and principal of the Family Trust to any one or more of my spouse and my descendants (whenever born) in equal or unequal shares as the Trustee from time to time considers advisable for the support in reasonable comfort, health care, education at any level, best interests and welfare of such beneficiaries. In exercising this discretion, the Trustee shall give priority to the interest of my spouse. Any undistributed net income shall be added to the principal of the Family Trust at least annually.

3. **Termination.** Upon the first to occur of (a) my spouse's death, (b) the date on which my marriage to my spouse is terminated by court decree, and (c) the date on which I am legally separated from my spouse, the Trustee shall distribute the

MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

remaining assets in equal shares to such of my children as are then living, or if no child of mine is then living, to my then living descendant in shares *per stirpes.*

4. **Retention of Residence.** If any interest in a residence (the "Residence") is held as part of the Family Trust, I authorize the Trustee to retain such Residence for my spouse's life notwithstanding that the Residence may constitute a large part or all of the principal of the Family Trust and may lack the diversification or productivity ordinarily considered prudent for trust investments. The Trustee may pay any insurance premiums and other costs of preserving and maintaining such property, but the Trustee shall have no obligation to pay such expenses to the extent there are no liquid assets with which to pay such expenses. My spouse may continue to use the Residence while the Family Trust is in existence and shall not be required to pay rent, but so long as my spouse continues to use the Residence my spouse shall pay any real estate taxes that may be assessed on the Residence, any insurance premiums and any other costs of preserving and maintaining the Residence, to the extent that the liquid assets of the Family Trust, after payment of other trust expenses and obligations, are insufficient to pay such expenses. The Trustee shall not sell the Residence so long as my spouse continues to use it. The Trustee may, in its discretion, rent the Residence or otherwise allow a descendant or descendants of mine to use the residence, upon such terms as the Trustee, in its absolute discretion, deems advisable, provided that if my spouse is not incapacitated my spouse consents to such use. Upon the written direction of my spouse, the Trustee shall sell the Residence and use any part or all of the sales proceeds to purchase an interest in any substitute residence designated by my spouse. Such interest in a substitute residence shall thereafter be treated as the original Residence for purposes of this Section. I intend that such substitute residence may include any condominium, co operative apartment, nursing home arrangement or other home designated by my spouse. If no substitute residence is designated, the Trustee shall invest the sales proceeds as it deems advisable to be held pursuant to the terms of the Family Trust. Notwithstanding the foregoing, my spouse may at any time purchase the Residence from the Trustee for its fair market value, determined as of the date my spouse delivers to the Trustee a written purchase offer. No Trustee shall be accountable for any loss sustained by reason of any action taken or omitted pursuant to this Section, and the powers granted under this Section shall be exercised only in a fiduciary capacity. "Residence" includes any fractional interest therein.

5. **Spouse's Power to Substitute Assets.** Notwithstanding any other provision, during the existence of the Family Trust, my spouse, so long as I am living and legally married to and not in a fiduciary capacity, to acquire any or all assets held by the Family Trust by substituting assets of an equivalent value.

<u>ARTICLE V. Trustee</u>

1. **Appointment of Trustee. Ara Thomassian** of **La Crescenta,** California shall be the initial Trustee of this trust. All acting Trustees of any trust are collectively referred to as "the Trustee"; all acting individual Trustees of any trust are collectively referred to as "the individual Trustee"; and all individuals who are acting as independent Trustees of any trust are collectively referred to as "the

### MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

independent individual Trustee." An "independent Trustee" of any trust is either a corporate Trustee or an individual who is not a beneficiary of such trust and has no obligation to support any beneficiary.

2. **Individual Trustee May Designate Successor.** Any individual Trustee may designate a successor Trustee by naming one or more qualified individuals or qualified corporations, in the alternative, as such Trustee's immediate successor. Any designation of a successor Trustee under this Section may be revoked by such individual Trustee at any time prior to such individual ceasing to act as Trustee. Any such designation or revocation thereof shall be made by written notice to me, if I am then living, to the designees, and to such of the successor Trustees named in the preceding Section as are then living. No designation of a corporate successor shall become effective if a corporate Trustee is then acting, and no designation of any successor Trustee under this Section shall become effective if an individual named in the preceding Section as a successor to the designating Trustee is willing and able to act.

3. **Addition of Independent Individual Trustee.** If no independent Trustee of a trust is acting, the individual Trustee of such trust may appoint in writing a qualified individual who will be an independent Trustee as an additional Trustee of such trust to act with the other Trustee or Trustees from time to time acting, or if none, as sole Trustee. Notwithstanding any other provision, an independent individual Trustee appointed pursuant to this Section may not designate a successor Trustee.

4. **Addition of Corporate Trustee.** If no corporate Trustee of a trust is acting, the individual Trustee of such trust may appoint in writing a qualified corporation as corporate Trustee of such trust, to act with the individual Trustee from time to time acting, or if none, as sole Trustee.

5. **Removal of Corporate Trustee.** The independent individual Trustee of a trust, if any, may remove the corporate Trustee of such trust for reasonable cause by written notice to such Trustee.

6. **Appointment of Successor Trustee.** If at any time no Trustee of a trust is willing and able to act, the primary beneficiary of such trust, if any, otherwise a majority of the income beneficiaries of such trust, shall in writing appoint any qualified corporation as successor Trustee. No such appointment shall be effective if a successor Trustee who is willing and able to act is named in or pursuant to another Section.

7. **Deadlock.** If the Trustees qualified to participate in an action or decision of the Trustees are evenly divided and a corporate Trustee so qualified is then acting, the individual Trustee so qualified shall control. If the Trustees qualified to participate in an action or decision of the Trustees are evenly divided and no corporate Trustee so qualified is then acting, the individual Trustee so qualified other than any independent individual Trustee shall control. Any Trustee who is not qualified to participate in or who dissents from such action or decision shall not be liable therefor.

8. **Investment Advisor.** When there are two or more Trustees of a trust, one of which is a corporate Trustee, the individual Trustee of such trust may appoint one or more investment advisors who regularly offer investment counselling services to act as "Advisor" as to any part or all of the assets of such trust. Such individual Trustee is authorized to retain and discharge such Advisors and determine the

## MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

extent of each such Advisor's investment responsibility. The corporate Trustee shall not have any investment responsibility for any part of the assets of such trust to the extent investment responsibility for such part has been given to such an Advisor and shall not be liable for any exercise nor non-exercise of the investment responsibility given to such an Advisor. The corporate Trustee shall have no obligation to review or inquire into any such Advisor's exercise or non-exercise of such Advisor's investment responsibility. With respect to any period during which the corporate Trustee's duties and responsibilities have been reduced pursuant to this Section, the corporate Trustee shall lower its fee to a level commensurate with its reduced duties and responsibilities, and its refusal to do so shall constitute reasonable cause for removal of such corporate Trustee.

9. **Divorced Trustee.** My spouse (a "Divorced Trustee") shall be unable to act as Trustee if my marriage to my spouse is terminated by court decree or if I am legally separated from my spouse. Any individual Trustee designated by a Trustee who is unable to act because of this Section (including without limitation by a Divorced Trustee) shall also be unable to act. The preceding sentence shall not apply to any Trustee otherwise named, designated or appointed under this Article.

<u>ARTICLE VI. Trustee Powers</u>

1. **Powers.** Except as otherwise provided, the Trustee shall have, without obtaining any order of court, the following powers:

a. **Investment.** To invest and reinvest, by the exercise of options or otherwise, in stocks, bonds, mutual funds, common trust funds, mortgages, notes, life, endowment or annuity policies on the life of any beneficiary, or other assets of any kind, real or personal, in any amounts or proportions, without being limited by any statute or rule of law concerning investments by trustees; and to make joint investments for any trusts having the same trustee, allocating to each trust a proportionate undivided interest in such investments and dividing the income proportionately among them;

b. **Retention of Residence.** To retain any interests in my Personal Residence received from any source and to acquire and retain other such property, notwithstanding that such property may constitute a large part or all of the principal of the trust and may therefore lack the diversification ordinarily considered prudent for trust investments; to pay any insurance premiums and other costs of preserving and maintaining such property, but the Trustee shall have no obligation to pay such expenses to the extent that there are no liquid assets with which to pay such expenses;

c. **Margin Accounts.** To buy, sell and trade securities in any manner, including short sales or on margin, and for such purposes, to maintain and operate margin accounts with brokers and to pledge any securities with brokers as security for loans or advances made to the Trustee;

MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

d. **Sale.** To sell (for cash or on credit, at public or private sale), exchange and grant options to acquire any  asset; and to determine the terms of all such sales, exchanges and options;

e. **Real and Tangible Personal Property.** To make leases and subleases and grant options to lease, although the terms thereof extend beyond the termination of any trust; to operate, maintain, improve, rehabilitate, alter, demolish, abandon, release or dedicate any real or tangible personal property; and to develop or subdivide real property, grant easements and take any other action with respect to real or tangible personal property which an individual owner thereof could take;

f. **Accounting.** To establish out of income and credit to principal reasonable reserves for depreciation, depletion, amortization and obsolescence; to amortize out of income any premium paid for interest-bearing debt obligations; to charge any part of a Trustee's compensation against income or principal, as may be equitable; and to determine, in an equitable manner, in any case not then covered by statute, how receipts and disbursements shall be apportioned between income and principal;

g. **Lending.** To make secured or unsecured loans, with or without interest, to any person other than me or my spouse, including any beneficiary, upon such terms as the Trustee considers proper;

h. **Borrowing and Mortgaging.** To borrow money from the Trustee or from any other source; to extend or renew any indebtedness upon such terms as the Trustee considers proper; and to mortgage or pledge any asset to secure such indebtedness;

i. **Merger of Trusts.** To merge any trust with any other trust, however created, which has the same beneficiaries and substantially the same provisions and federal tax attributes. The Trustee shall have sole discretion to determine whether trusts meet the foregoing merger requirements. Any determinations the Trustee makes in good faith under the preceding sentence shall not be subject to review, and the Trustee shall be held harmless from any cost or liability as to such determinations;

j. **Conservation of Assets.** To take any action with respect to conserving or realizing upon the value of any asset and with respect to foreclosures, reorganizations or other changes affecting such asset which an individual owner of such asset could take; and to collect, pay, contest, arbitrate, compromise or abandon claims of or against any trust;

k. **Delegation and Agents.** To employ and compensate separately any brokers, attorneys, auditors, depositories, real estate managers, investment advisors, appraisers, auctioneers and other agents (including any fiduciary and any firm with which a fiduciary is associated without reducing compensation in any capacity), with or without discretionary powers; to vote any stocks or other securities in person or by proxy; to hold any asset in bearer form or in the name of a nominee without disclosure of any fiduciary relationship; and to delegate to voting trustees, bondholder's committees, any beneficiary or other person any powers which the Trustee may deem it desirable to delegate for the best interest of any trust;

# MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

l. **Dealing with Fiduciaries.** To enter into any authorized transaction with the fiduciary of any other trust or estate, although such fiduciary is also a Trustee;

m. **Distributions and Allocations.** To make any distribution or allocation in cash or in kind; to distribute or allocate different kinds or disproportionate shares of assets or undivided interests in assets; and to determine the value of any asset; and

n. **Substitute Trustee.** To appoint any qualified individual or qualified corporation as the Substitute Trustee with respect to any asset situated in any jurisdiction in which the Trustee is, at any time, unwilling or unable to act, which Substitute Trustee shall have such powers and duties as are delegated to it or imposed upon it by the Trustee; and at any time to remove any Substitute Trustee and appoint another, or terminate the substitute trusteeship.

2. **Residence.** A "Residence" is a residence (or undivided fractional interest therein) held by the Residence Trust, including any appurtenant structures used for residential purposes and any land adjacent to the residence not exceeding an amount reasonably appropriate for residential purposes, taking into account the residence's size and location, but shall not include any personal property.

3. **Personal Residence.** A "Personal Residence" is a Residence (a) that is either (1) my "principal residence," as that term is defined in section 1034 of the Code, or (2) one other "residence" of mine, as that term is defined in section 280A(d)(1) of the Code without regard to section 280A(d)(2) of the Code, and (b) whose primary use is as a residence when occupied by me. Notwithstanding the preceding sentence, if a Residence is my principal residence, it will not fail to be a Personal Resi dence merely because a portion of the Residence is used in an activity meeting the requirements of section 280A(c)(1) or (4) of the Code, provided that such use is secondary to use of the Residence as a residence.

4. **Qualified Residence.** A "Qualified Residence" is a Residence that is either used as my Personal Residence or held for use as my Personal Residence. For purposes of this Section, a Residence is used as my Personal Residence only if, when occupied by me, its primary use is as a residence, and, when not occupied by me, its primary use is not other than as a residence. For purposes of this Section, a Residence is held for use as my Personal Residence so long as it is not occupied (as that term is used in the Regulations under section 2702 of the Code) by any person other than me, my spouse or a dependent of mine and is available at all times for use by me as a Personal Residence.

5. **Insurance for Trust Property.** I shall have the right, but, except as otherwise provided, not the obligation, to insure any trust property while it is held by the Residence Trust, provided that all proceeds of such insurance are payable to such trust.

6. **Trust Expenses and Taxes.** Except as otherwise provided, the Trustee shall pay (a) all reasonable administration expenses of each trust, including reasonable compensation for its services, and (b) all taxes imposed upon such trust.

7. **Undistributed Income.** Except as otherwise provided, any income collected after the last income distribution date but undistributed at the time of the death of any income beneficiary, together with any accrued income, shall be held and

MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

accounted for, or distributed, as income attributable to the next succeeding beneficiary or beneficiaries as their interests may appear.

8. **Payments to Beneficiaries Under a Disability.** The Trustee, in its discretion, may distribute any income or principal which is distributable to any person who is under a legal disability or is, although not adjudicated incompetent, in the opinion of the Trustee unable properly to administer such income or principal for any reason, in any one or more of the following ways; (a) directly to such beneficiary; (b) to the personal representative of such beneficiary or to a Custodian for such beneficiary under any applicable Uniform Transfers or Gifts to Minors Act; (c) to any person standing *in loco parentis* to such beneficiary; (d) to any agent under a power of attorney created by such beneficiary; and (e) by the Trustee expending such income or principal directly for the benefit of such beneficiary.

9. **Spendthrift Provision.** No interest of any beneficiary shall be transferrable or assignable by anticipation, either by the voluntary or involuntary act of such beneficiary or by operation of law, or be liable for any debts or liabilities (including liabilities for alimony or child support) of such beneficiary. This Section shall not limit the exercise of any power of appointment.

10. **Trust to Terminate Within Rule Against Perpetu ities.** Notwithstanding any other provision, each trust shall terminate, if not sooner terminated, at the expiration of 21 years after the death of the last survivor of me, my spouse, such of my descendants as are alive on the date of this instrument, and any individual named to be a primary beneficiary who is alive on the date of this instrument, and the entire principal and undistributed income of each such trust shall thereupon vest in and be distributed to its primary beneficiary, or if none, to my then living descendants in shares *per stirpes.*

11. **Termination of Small Trusts.** Notwithstanding any other provision, if at any time after my death the value of any trust as determined by the Trustee is less than $50,000.00, and if the primary beneficiary is not then acting as Trustee, the Trustee may in its discretion terminate such trust and distribute the entire principal and undistributed income of such trust to its primary beneficiary, or if none, to my then living descendants in shares *per stirpes.*

12. **Waiver of Court Supervision.** The Trustee shall not be required (a) to give bond or surety, (b) to be appointed by any court or (c) to account to any court in the absence of a demand for an accounting by a beneficiary entitled thereto.

13. **Duty of Person Dealing With Trustee.** No person paying any money or delivering any property to, or at the direction of, the Trustee shall be required to see to its application and no person dealing with the Trustee shall be required to inquire into the terms of this instrument.

14. **Annual Accounting.** At least annually the Trustee shall furnish an account showing the receipts, disbursements and inventory of each trust (a) to the income beneficiaries of such trust and (b) upon request (or in the Trustee's discretion without a request) to those persons who would have taken the remainder interest in such trust if such trust had terminated on the last day of the period covered by such account.

MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

15. **Resignation of Trustee.** Any Trustee of any Trust may resign by 30 days' written notice to the other then acting Trustee or Trustees, if any, to the next designated successor Trustee, if any, and to the income beneficiaries of such trust.

16. **Qualified Trustee.** Except as otherwise provided, a "qualified individual" means any individual (other than me) who is 25 years of age or older, and a "qualified corporation"  means any bank, trust company or other corporate entity that is authorized to act as Trustee.

17. **Approval of Accounts.** The primary beneficiary of any trust, if any, otherwise a majority of the income beneficiaries of such trust, may approve the accounts of any Trustee of such trust and may give a release to such Trustee with respect to such accounts. The power to approve such accounts does not include the power to enlarge or shift the beneficial interest of any beneficiary. Any such release shall be binding upon all persons with the same effect as though such accounts were approved by a court of competent jurisdiction. No successor Trustee shall have any responsibility to inquire into or be liable for any act or omission of any predecessor.

18. **Beneficiary Under a Disability.** The personal representative of the estate of a beneficiary under a legal disability, if any, otherwise a spouse, if any, a parent, if any, or a guardian of the person of such a beneficiary for whose estate no representative has been appointed, may act for such beneficiary in the order named in receiving and approving any account of a Trustee, releasing a Trustee with respect to such account, appointing a successor Trustee, directing the Trustee of the Family Trust to sell any interest in a residence and designating a substitute residence, and executing any receipt and receiving any notice.

19. **Control.** Except as otherwise provided, whenever more than one Trustee is acting, a majority of the Trustees qualified to participate in an action or decision of the Trustees shall control. Any Trustee who is not qualified to participate in or dissents from such action or decision shall not be liable therefor.

20. **Delegation by Individual Trustee.** Any individual Trustee may at any time by notice in writing delegate to any other Trustee any or all of the powers herein granted to such individual Trustee. Any such delegation may be for a definite or indefinite period and may be revoked by notice in writing. Any person may rely on the written statement of any Trustee with respect to any such delegation.

21. **Selection of Assets.** I request but do not require that selection of assets for any distribution or allocation be made in such manner as appears reasonably likely to minimize income taxes imposed by reason of such distribution or allocation or any subsequent sale or exchange, unless another manner of selection is specifically directed or appears advisable. In determining whether another manner of selection appears advisable, equality of treatment of beneficiaries as to the income tax bases of assets distributed or allocated may be disregarded. No adjustment shall be made between principal and income or in the relative interests of the beneficiaries to compensate for any such selection.

22. **No Advancements.** Unless specifically provided otherwise, no distribution by the Trustee shall be treated as an advancement.

23. **Exclusion of Interested Fiduciary.** Notwithstanding any other provision, an individual fiduciary (a) shall have no incident of ownership or power or

# MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

discretion with respect to any policy of insurance upon such fiduciary's life, (b) shall have no discretionary power to allocate or distribute assets to the extent that such would discharge such fiduciary's legal obligation to support any beneficiary, (c) shall, if such fiduciary has a beneficial interest in a trust, have no discretionary power to allocate or distribute assets of such trust, directly or indirectly, to or for any beneficiary (including such fiduciary) unless necessary for such beneficiary's support in reasonable comfort, health care or education at any level, considering all factors such fiduciary deems pertinent, and (d) shall have no other power or discretion that would be deemed a general power of appointment under section 2041 of the Code unless such fiduciary has such a power in other than a fiduciary capacity.

24. **Generation-Skipping Restrictions.** Notwithstanding any other provision, the Trustee shall make no discretionary distribution of income or principal of any trust, and no lifetime power of appointment over such trust may be exercised in any manner, which would reduce or discharge the legal obligation of any person (the "Obligor") to support any individual if the Obligor is assigned to a generation below the transferor by section 2651 of the Code, unless the Obligor or another individual assigned to the same generation as such Obligor otherwise has or at any time has had an interest in such trust as defined in section 2652(c)(1) of the Code.

25. **Incapacity.** A person shall be considered incapacitated if under a legal disability or, through illness, age or other cause, unable to give reasoned consideration to financial matters. The existence of any such inability may be determined from time to time by the principal physician then attending to such person's care, and any person may rely upon written notice of such determination. An incapacitated Trustee is unable to act.

26. **Per Stirpes.** Whenever assets are to be allocated for the descendants of a person in shares *per stirpes,* such assets shall be divided into equal shares, one such share for each then living child of such person and one such share for each deceased child of such person who has descendants then living. Any such deceased child's share shall then be allocated for such child's descendants in shares *per stirpes* in accordance with the preceding sentence.

27. **Income Beneficiary.** An "income beneficiary" means a person to whom or for whose benefit any part or all of the income of such trust may be currently distributed.

28. **Spouse.** The "spouse" of any person other than me means the individual legally married to, and not legally separated from, such person on the date then in question or on the date of the death of such person.

29. **Primary Beneficiary.** I shall be the "primary beneficiary" of the Residence Trust and of any Annuity Trust established hereunder.

30. **Code and Regulations.** References to sections of the Code refer to the Internal Revenue Code of 1986, as heretofore or hereafter amended, and include corresponding provisions of subsequent federal tax laws. References to the Regulations refer to the applicable Treasury Regulations promulgated with respect to the Internal Revenue Code of 1986, as here tofore or hereafter amended, and include corresponding provisions of subsequent Treasury Regulations.

31. **Governing Law.** The trust shall be construed in accordance with the laws of California, and all questions concerning the rights and duties of the parties and

# MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

beneficiaries, or concerning compliance with the provisions of such trust, shall be resolved in accordance with the laws of California.

32. **Lapse of Gifts.** I intend that no statute or other rule of law governing lapsed legacies apply to any gift under this instrument.

## ARTICLE VII. Miscellaneous

1. **Power to Amend or Reform.** I intend this instrument to comply with all of the requirements of a Qualified Personal Residence Trust and for any Annuity Trust to comply with all of the requirements of a Qualified Annuity Interest as those terms are defined in the Regulations under section 2702 of the Code. I therefore direct the Trustee to amend or to institute a judicial proceeding to reform the terms of any trust created hereunder as may be required to comply with such requirements.

2. **Withholding Trusts.** Notwithstanding any other provision, any assets distributable to a person who has not attained age 25 or who is legally disabled shall immediately vest in such person, but the Trustee shall retain such assets (or sell any part or all and retain the proceeds) as a separate trust for such person (the "primary beneficiary") subject to the terms of this Section.

(a) **Distributions.** The Trustee may distribute to or for the benefit of the primary beneficiary any part or all of the net income and principal of such trust as the Trustee from time to time considers advisable for such beneficiary's support in reasonable comfort, health care and education at any level. In exercising this discretion, the Trustee may consider the accustomed manner of living from time to time of such primary beneficiary and any other factors the Trustee deems pertinent. Any undistributed net income shall be added to principal at least annually.

(b) **Termination.** At such time as the primary beneficiary has attained age 25 and is not legally disabled, the Trustee shall distribute the remaining assets of such trust to such beneficiary. If the primary beneficiary dies before such distribution, the Trustee shall distribute the remaining assets of such trust to the primary beneficiary's estate.

3. **Child and Descendant.** A "child" or "descendant" means a child or descendant born of a lawful marriage; any person lawfully adopted prior to attaining age 21 shall be deemed "born of a lawful marriage." Except where distribution is directed to descendants " *per stirpes,*" the word "descendants" includes descendants of every degree whether or not a parent or more remote ancestor of a descendant is also living.

## MIKE V. THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

Signed and agreed to on **March 11, 2013**, and the Trustee acknowledges acceptance of the Trust and receipt of the assets described in the attached Schedule.

_____
**Mike V. Thomassian,** Grantor


_____
**Ara Thomassian**, Trustee


# Acknowledgment

State of California            )
                               ) ss
County of Los Angeles  )

On _____, **2013**, before me_____, Notary Public, personally appeared **MIKE V. THOMASSIAN** and **ARA THOMASSIAN**, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____

# EXHIBIT "B"

# MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

THIS AGREEMENT, dated March 11, 2013, between MAGDA THOMASSIAN of 5725 Ocean View Blvd., La Canada, California 91011 (hereinafter called the "Grantor"), and TALIN THOMASSIAN of La Crescenta, California (hereinafter called the "Trustee").

I certify that I was born on November 18, 1956. My spouse is Mike V. Thomassian. My two (2) children now living are:

Talin Thomassian, female, born on September 4, 1978; and
Ara Thomassian, male, born on September 7, 1982.

## ARTICLE I. General Provisions

1. **Irrevocable.** This instrument and the trusts it establishes are irrevocable and, Article VI, Section 1 is not subject to amendment or modification in any manner.

2. **Restrictions.** Notwithstanding any other provision (a) assuming that a trust terminates pursuant to Article II, Section 4(a) or Article III, Section 5(a) below, neither I nor any other person shall have any power or right the possession of which would result in the inclusion of any asset of such trust in my gross estate pursuant to any of sections 2033 through 2042 of the Code; and (b) neither I nor any other person shall have any power or right the possession of which would result in the inclusion of any asset of the Family Trust in my gross estate or the gross estate of my spouse pursuant to any of sections 2033 through 2042 of the Code.

## ARTICLE II. Qualified Personal Residence Trust

1. **Purpose.** I intend the Residence Trust to constitute a Qualified Personal Residence Trust pursuant to the Regulations under section 2702(a)(3)(A)(ii) of the Code and all terms used herein and not defined herein shall have the same meaning in this instrument as they do in the Code and in the Regulations. No provision of this instrument shall be construed to cause the Residence Trust to fail to comply with the Regulations governing Qualified Personal Residence Trusts.

2. **Use of Property.** While a residence is held by the Residence Trust (a) the Residence shall be available for my use at all times, and the Trustee shall permit me at all times to use the Residence as my personal residence without rent or other charge; and (b) the Trustee shall permit another to use, occupy, or rent the Residence only if such use, occupancy, or rental would not disqualify the

# MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

Residence as a Qualified Residence and would not conflict with my use of the Residence.

3. **Distribution of Income.** The Trustee shall distribute to me all the net income of the Residence Trust in convenient installments not less often than quarterly. All income of the Residence Trust accrued or undistributed at the termination of such trust shall be distributed to me, if then living, otherwise to my estate.

4. **Termination.** The Residence Trust shall terminate, to the extent not previously terminated pursuant to Section 6, upon the Termination Date, which is the date of the first to occur of the following events:

a. The 20th anniversary of the date of this instrument;

b. My death.

5. **Distribution of Assets at Termination.**

a. If the Residence Trust terminates pursuant to Section 4(a), the Trustee shall distribute the remaining principal of the Residence Trust (i) if my spouse is then living and is then legally married to and not legally separated from me, to the Trustee to hold as the principal of the Family Trust pursuant to the terms of Article IV, for the benefit of my spouse (the "primary beneficiary") and my family; (ii) otherwise, in equal shares to such of my children as are then living, or if no child of mine is then living, to my then living descendants in shares *per stirpes.*

b. If the Residence Trust terminates by reason of my death, the Trustee shall distribute the remaining principal of the Residence Trust to my estate.

6. **Conversion to Grantor Retained Annuity Trust.** If a Conversion Date occurs on or prior to the Termination Date, the Residence Trust will cease to be a Qualified Personal Residence Trust with respect to the Nonqualifying Assets, if any, and on or before the 30th day after the Conversion Date the Trustee shall create a separate Grantor Retained Annuity Trust under Article III ("Annuity Trust") and distribute the Nonqualifying Assets to such Annuity Trust, which shall make annuity payments as provided in Article III retroactive to the Cessation Date. To the extent Residence Trust assets are distributed to an Annuity Trust, the Residence Trust shall thereupon terminate.

7. **Conversion Dates and Nonqualifying Assets.**

(a) **Sale of Residence.** If the Residence is sold prior to the Termination Date, the Conversion Date is the earliest of: (1) the second anniversary of the date of sale; (2) the date on which a new Residence is acquired by the Residence Trust; and (3) the Termination Date, and the Nonqualifying Assets are all proceeds of sale held by the Residence Trust on the earliest of: (1) such anniversary; (2) the instant immediately after the acquisition of such new Residence; and (3) the Termination Date. The date of sale shall be the Cessation Date.

MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

(b) **Damage to or Destruction of Residence.** If damage or destruction renders the Residence unusable as residence prior to the Termination Date, the Conversion Date is the earlier of: (1) the second anniversary of the date of the damage or destruction; and (2) the Termination Date, and the Nonqualifying Assets are all assets unless prior to the Conversion Date replacement of or repairs to the Residence are completed or a new Residence is acquired by the Residence Trust in which case the Nonqualifying Assets, if any, shall be determined under Subsection (c). The date of the damage or destruction shall be the Cessation Date.

(c) **Insurance Proceeds.** If the Residence Trust receives insurance proceeds as a result of damage to or destruction of the Residence occurring prior to the Termination Date, the Conversion Date is the earliest of: (1) the second anniversary of the date of the damage or destruction; (2) the date on which a new Residence is acquired by the Residence Trust; (3) the date on which replacement of or repairs to the Residence are completed; and (4) the Termination Date, and the Nonqualifying Assets are all such insurance proceeds held by the Residence Trust on the earliest of: (1) such anniversary; (2) the instant immediately after the acquisition of such new Residence; (3) the instant immediately after such replacement or repairs are completed; and (4) the Termination Date. The date of the damage or destruction shall be the Cessation Date.

(d) **Involuntary Conversion of Residence.** If the Residence Trust receives any amounts as a result of an involuntary conversion (within the meaning of section 1033 of the Code) of the Residence prior to the Termination Date, the Conversion Date is the earliest of: (1) the second anniversary of such involuntary conversion; (2) the date on which a new Residence is acquired by the Residence Trust; and (3) the Termination Date, and the Nonqualifying Assets are all such amounts held by the Residence Trust on the earliest of: (1) such anniversary; (2) the instant immediately after the acquisition of such new Residence; and (3) the Termination Date. The date of such involuntary conversion shall be the Cessation Date.

(e) **Nonqualified Use of Residence.** If by reason other than sale of the Residence, damage to or destruction of the Residence that renders it unusable as a residence, or involuntary conversion (within the meaning of section 1033 of the Code) of the Residence, the Residence Trust ceases to hold a Qualified Residence, the Cessation Date and the Conversion Date shall be such date and the Nonqualifying Assets shall be all trust assets.

8. **Restrictions.**

(a) **Commutation.** My interest in the Residence Trust may not be commuted.

(b) **Principal Distributions.** Except as provided in Section 6, prior to the Termination Date no principal of the Residence Trust shall be distributed to any person other than me.

9. **Maintenance of Property.** During the term of the Residence Trust, I shall be responsible for the payment of real estate taxes, maintenance expenses, utility bills, costs of property insurance for the Residence, and other expenses attributable to a life tenant under applicable state law. To the extent that the

MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

Trustee pays such expenses from the Residence Trust funds, the Trustee shall have a right to reimbursement from my estate. The Trustee shall pay all other expenses of the Residence Trust from the Residence Trust funds, including any rental income received by the Trustee. In addition, to the extent that I pay for any improvements to the Residence or for any other expense attributable to a remainder beneficiary under applicable state law, I shall have a right of reimbursement from the remainder beneficiaries unless I waive such right in writing. Improvements may be made to the Residence provided that, as improved, the Residence will be a Personal Residence.

10. **Additions to the Residence Trust.** The Trustee of the Residence Trust may not accept additional assets transferred to the Trustee, except that the Trustee may from time to time accept and shall hold in a separate account additional cash transferred by me provided that such cash, when added to the cash already held in such account, does not exceed the amount required for (a) payment of trust expenses, including but not limited to mortgage payments, taxes, insurance premiums, and maintenance costs already incurred or reasonably expected to be paid by the Residence Trust within six months of the date on which such cash is first held, (b) improvements to the residence to be paid by the Residence Trust within six months of the date on which such cash is first held and (c) the purchase of a Residence to replace the Residence held by the Residence Trust within three months of the date the cash is added to the trust if prior to the date of the addition the Trustee has entered into a contract for the purchase of such residence.

11. **Trust Assets.** The Trustee may hold as part of the Residence Trust only the following assets:

   a. One residence to be used or held for use as a personal residence of the term holder, which may be a principal residence, one other residence meeting the requirements of section 280A(d)(1) disregarding section 280A(d)(2), or a fractional interest in either (section 25.2702-5(c)(2) & (5)).

   b. Cash added to the Residence Trust pursuant to the preceding Section, but the Trustee must, not less frequently than quarterly, distribute to me any such cash in excess of the amounts permitted under the preceding Section. Notwithstanding any other provision, upon termination of the Residence Trust any such cash that is not used to pay trust expenses due and payable on the date of termination (including expenses directly related to termination), shall be distributed to me, if I am living, otherwise to my estate.

   c. Any proceeds from the sale of a Residence held by the Residence Trust (including any income thereon) for a period not to exceed two years from the date of sale, provided such proceeds are held in a separate account.

   d. The proceeds of any insurance paid to the Residence Trust as a result of the damage to or destruction of the Residence and any amounts received upon an involuntary conversion (within the meaning of section 1033 of the Code) of the Residence (including any income thereon) for a period not to exceed two years, provided such proceeds or amounts are held in a separate account.

   e. Policies of insurance on the Residence.

12. **Sale of Residence.** Notwithstanding any provision of this trust agreement to the contrary, and to the extent required by the Internal Revenue Code and all

# MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

applicable regulations, trustee shall not sell or transfer any residence property which is an asset of the trust directly or indirectly to the Grantor, Grantor's spouse or to an entity which is directly or indirectly controlled by the Grantor or Grantor's spouse, or to a grantor trust created by the Grantor or Grantor's spouse within the meaning of section 671-677 of the Internal Revenue Code during the term of years stated in Article II of this agreement, or at any time after the expiration of such term that said trust is a grantor trust.

## ARTICLE III. Grantor Retained Annuity Trust

1. **Annuity Trust.** Any assets of the Residence Trust that are to be distributed to an Annuity Trust under this Article shall be held in a separate Annuity Trust pursuant to the terms of the Article and shall not be added to the principal of any Annuity Trust then in existence. I intend that each Annuity Trust be a qualified Grantor Retained Annuity Trust as defined in the Regulations under section 2702 of the Code and my interest therein shall constitute a "qualified annuity interest" as that term is defined in section 25.2702-5(c)(8)(ii) of the Regulations. The Trustee of an Annuity Trust may not accept additional assets transferred to the Trust.

2. **Payment of Annuity.** For each taxable year the Trustee shall pay to me from each Annuity Trust an "Annuity Amount" which shall be equal to the smallest amount permitted under section 25.2702-5(c)(8) of the Regulations or other applicable Regulations under the Code. The Annuity Amount shall be paid in equal quarterly installments at the end of each quarter from income of the Annuity Trust and, to the extent income is insufficient, from principal of the Annuity Trust. Any income of the Annuity Trust not distributed to me as part of the Annuity Amount shall be added to principal. The trustee shall prorate the Annuity Amount on a daily basis for any short taxable year and for the taxable year of my death if an Annuity Trust terminates by reason of my death. The Trustee shall make annuity payments retroactive to the Cessation Date for that Annuity Trust, including interest on any retroactive payments compounded annually calculated at the rate in effect under section 7520 of the Code on the Cessation Date, no later than the date the first current annuity payment is made.

3. **Adjustment for Incorrect Valuation.** If an Annuity Amount is incorrectly determined by the Trustee, including but not limited to by reason of an incorrect valuation of the trust assets or any trust interest, then within a reasonable period of time after the final determination of the correct Annuity Amount, the Trustee shall pay to me, if the Annuity Amount paid was too low, or I shall pay to the Trustee, if the Annuity Amount paid was too large, an amount equal to the difference between each annuity installment previously made from such Annuity Trust, and the annuity installment that should have been made based on the Annuity Amount properly payable, plus interest on such amount computed at the rate required by the applicable Regulations, or if there are no such Regulations, at the rate used for valuing annuity interests under section 664 of the Code, compounded annually.

4. **Restrictions.**

# MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

(a) **Commutation.** My interest in an Annuity Trust may not be commuted.

(b) **Trust Distributions.** Prior to the termination of an Annuity Trust, no income or principal of such Annuity Trust shall be distributed to any person other than me.

5. **Termination.** Each Annuity Trust shall terminate upon the first to occur of the following events:

a. The 20th anniversary of the date of this instrument;

b. My death.

6. **Distribution of Assets at Termination.** On the termination of an Annuity Trust pursuant to Section 5, the Trustee, after paying a final annuity installment for a period ending on the date of termination, shall distribute the remaining Annuity Trust assets as follows:

a. If an Annuity Trust terminates on the 20th anniversary of the date of this instrument, the Trustee shall distribute the assets as follows: (i) if my spouse is then living and is then legally married to and not legally separated from me, to the Trustee to hold as the principal of the Family Trust, pursuant to the provisions of Article IV, for the benefit of my spouse (the "primary beneficiary") and my family; (ii) otherwise, in equal shares to such of my children as are then living, or if no child of mine is then living, to my then living descendants in shares *per stirpes*.

b. If an Annuity Trust terminates by reason of my death, the Trustee shall distribute the assets to my estate.

## ARTICLE IV. Family Trust

1. **Purpose.** The Trustee shall hold any assets given to the Family Trust for the benefit of my spouse (the "primary beneficiary") and my family.

2. **Discretionary Distributions.** The Trustee may distribute any part or all of the net income and principal of the Family Trust to any one or more of my spouse and my descendants (whenever born) in equal or unequal shares as the Trustee from time to time considers advisable for the support in reasonable comfort, health care, education at any level, best interests and welfare of such beneficiaries. In exercising this discretion, the Trustee shall give priority to the interest of my spouse. Any undistributed net income shall be added to the principal of the Family Trust at least annually.

3. **Termination.** Upon the first to occur of (a) my spouse's death, (b) the date on which my marriage to my spouse is terminated by court decree, and (c) the date on which I am legally separated from my spouse, the Trustee shall distribute the

## MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

remaining assets in equal shares to such of my children as are then living, or if no child of mine is then living, to my then living descendant in shares *per stirpes.*

4. **Retention of Residence.** If any interest in a residence (the "Residence") is held as part of the Family Trust, I authorize the Trustee to retain such Residence for my spouse's life notwithstanding that the Residence may constitute a large part or all of the principal of the Family Trust and may lack the diversification or productivity ordinarily considered prudent for trust investments. The Trustee may pay any insurance premiums and other costs of preserving and maintaining such property, but the Trustee shall have no obligation to pay such expenses to the extent there are no liquid assets with which to pay such expenses. My spouse may continue to use the Residence while the Family Trust is in existence and shall not be required to pay rent, but so long as my spouse continues to use the Residence my spouse shall pay any real estate taxes that may be assessed on the Residence, any insurance premiums and any other costs of preserving and maintaining the Residence, to the extent that the liquid assets of the Family Trust, after payment of other trust expenses and obligations, are insufficient to pay such expenses. The Trustee shall not sell the Residence so long as my spouse continues to use it. The Trustee may, in its discretion, rent the Residence or otherwise allow a descendant or descendants of mine to use the residence, upon such terms as the Trustee, in its absolute discretion, deems advisable, provided that if my spouse is not incapacitated my spouse consents to such use. Upon the written direction of my spouse, the Trustee shall sell the Residence and use any part or all of the sales proceeds to purchase an interest in any substitute residence designated by my spouse. Such interest in a substitute residence shall thereafter be treated as the original Residence for purposes of this Section. I intend that such substitute residence may include any condominium, co operative apartment, nursing home arrangement or other home designated by my spouse. If no substitute residence is designated, the Trustee shall invest the sales proceeds as it deems advisable to be held pursuant to the terms of the Family Trust. Notwithstanding the foregoing, my spouse may at any time purchase the Residence from the Trustee for its fair market value, determined as of the date my spouse delivers to the Trustee a written purchase offer. No Trustee shall be accountable for any loss sustained by reason of any action taken or omitted pursuant to this Section, and the powers granted under this Section shall be exercised only in a fiduciary capacity. "Residence" includes any fractional interest therein.

5. **Spouse's Power to Substitute Assets.** Notwithstanding any other provision, during the existence of the Family Trust, my spouse, so long as I am living and legally married to and not in a fiduciary capacity, to acquire any or all assets held by the Family Trust by substituting assets of an equivalent value.

## ARTICLE V. Trustee

1. **Appointment of Trustee. Talin Thomassian** of **La Crescenta**, California shall be the initial Trustee of this trust. All acting Trustees of any trust are collectively referred to as "the Trustee"; all acting individual Trustees of any trust are collectively referred to as "the individual Trustee"; and all individuals who are acting as independent Trustees of any trust are collectively referred to as "the

# MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

independent individual Trustee." An "independent Trustee" of any trust is either a corporate Trustee or an individual who is not a beneficiary of such trust and has no obligation to support any beneficiary.

2. **Individual Trustee May Designate Successor.** Any individual Trustee may designate a successor Trustee by naming one or more qualified individuals or qualified corporations, in the alternative, as such Trustee's immediate successor. Any designation of a successor Trustee under this Section may be revoked by such individual Trustee at any time prior to such individual ceasing to act as Trustee. Any such designation or revocation thereof shall be made by written notice to me, if I am then living, to the designees, and to such of the successor Trustees named in the preceding Section as are then living. No designation of a corporate successor shall become effective if a corporate Trustee is then acting, and no designation of any successor Trustee under this Section shall become effective if an individual named in the preceding Section as a successor to the designating Trustee is willing and able to act.

3. **Addition of Independent Individual Trustee.** If no independent Trustee of a trust is acting, the individual Trustee of such trust may appoint in writing a qualified individual who will be an independent Trustee as an additional Trustee of such trust to act with the other Trustee or Trustees from time to time acting, or if none, as sole Trustee. Notwithstanding any  other provision, an independent individual Trustee appointed pursuant to this Section may not designate a successor Trustee.

4. **Addition of Corporate Trustee.** If no corporate Trustee of a trust is acting, the individual Trustee of such trust may appoint in writing a qualified corporation as corporate Trustee of such trust, to act with the individual Trustee from time to time acting, or if none, as sole Trustee.

5. **Removal of Corporate Trustee.** The independent individual Trustee of a trust, if any, may remove the corporate Trustee of such trust for reasonable cause by written notice to such Trustee.

6. **Appointment of Successor Trustee.** If at any time no Trustee of a trust is willing and able to act, the primary beneficiary of such trust, if any, otherwise a majority of the income beneficiaries of such trust, shall in writing appoint any qualified corporation as successor Trustee. No such appointment shall be effective if a successor Trustee who is willing and able to act is named in or pursuant to another Section.

7. **Deadlock.** If the Trustees qualified to participate in an action or decision of the Trustees are evenly divided and a corporate Trustee so qualified is then acting, the individual Trustee so qualified shall control. If the Trustees qualified to participate in an action or decision of the Trustees are evenly divided and no corporate Trustee so qualified is then acting, the individual Trustee so qualified other than any independent individual Trustee shall control. Any Trustee who is not qualified to participate in or who dissents from such action or decision shall not be liable therefor.

8. **Investment Advisor.** When there are two or more Trustees of a trust, one of which is a corporate Trustee, the individual Trustee of such trust may appoint one or more investment advisors who regularly offer investment counselling services to act as "Advisor" as to any part or all of the assets of such trust. Such individual Trustee is authorized to retain and discharge such Advisors and determine the

# MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

extent of each such Advisor's investment responsibility. The corporate Trustee shall not have any investment responsibility for any part of the assets of such trust to the extent investment responsibility for such part has been given to such an Advisor and shall not be liable for any exercise nor non-exercise of the investment responsibility given to such an Advisor. The corporate Trustee shall have no obligation to review or inquire into any such Advisor's exercise or non-exercise of such Advisor's investment responsibility. With respect to any period during which the corporate Trustee's duties and responsibilities have been reduced pursuant to this Section, the corporate Trustee shall lower its fee to a level commensurate with its reduced duties and responsibilities, and its refusal to do so shall constitute reasonable cause for removal of such corporate Trustee.

9. **Divorced Trustee.** My spouse (a "Divorced Trustee") shall be unable to act as Trustee if my marriage to my spouse is terminated by court decree or if I am legally separated from my spouse. Any individual Trustee designated by a Trustee who is unable to act because of this Section (including without limitation by a Divorced Trustee) shall also be unable to act. The preceding sentence shall not apply to any Trustee otherwise named, designated or appointed under this Article.

## ARTICLE VI. Trustee Powers

1. **Powers.** Except as otherwise provided, the Trustee shall have, without obtaining any order of court, the following powers:

a. **Investment.** To invest and reinvest, by the exercise of options or otherwise, in stocks, bonds, mutual funds, common trust funds, mortgages, notes, life, endowment or annuity policies on the life of any beneficiary, or other assets of any kind, real or personal, in any amounts or proportions, without being limited by any statute or rule of law concerning investments by trustees; and to make joint investments for any trusts having the same trustee, allocating to each trust a proportionate undivided interest in such investments and dividing the income proportionately among them;

b. **Retention of Residence.** To retain any interests in my Personal Residence received from any source and to acquire and retain other such property, notwithstanding that such property may constitute a large part or all of the principal of the trust and may therefore lack the diversification ordinarily considered prudent for trust investments; to pay any insurance premiums and other costs of preserving and maintaining such property, but the Trustee shall have no obligation to pay such expenses to the extent that there are no liquid assets with which to pay such expenses;

c. **Margin Accounts.** To buy, sell and trade securities in any manner, including short sales or on margin, and for such purposes, to maintain and operate margin accounts with brokers and to pledge any securities with brokers as security for loans or advances made to the Trustee;

MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

d. **Sale.** To sell (for cash or on credit, at public or private sale), exchange and grant options to acquire any asset; and to determine the terms of all such sales, exchanges and options;

e. **Real and Tangible Personal Property.** To make leases and subleases and grant options to lease, although the terms thereof extend beyond the termination of any trust; to operate, maintain, improve, rehabilitate, alter, demolish, abandon, release or dedicate any real or tangible personal property; and to develop or subdivide real property, grant easements and take any other action with respect to real or tangible personal property which an individual owner thereof could take;

f. **Accounting.** To establish out of income and credit to principal reasonable reserves for depreciation, depletion, amortization and obsolescence; to amortize out of income any premium paid for interest-bearing debt obligations; to charge any part of a Trustee's compensation against income or principal, as may be equitable; and to determine, in an equitable manner, in any case not then covered by statute, how receipts and disbursements shall be apportioned between income and principal;

g. **Lending.** To make secured or unsecured loans, with or without interest, to any person other than me or my spouse, including any beneficiary, upon such terms as the Trustee considers proper;

h. **Borrowing and Mortgaging.** To borrow money from the Trustee or from any other source; to extend or renew any indebtedness upon such terms as the Trustee considers proper; and to mortgage or pledge any asset to secure such indebtedness;

i. **Merger of Trusts.** To merge any trust with any other trust, however created, which has the same beneficiaries and substantially the same provisions and federal tax attributes. The Trustee shall have sole discretion to determine whether trusts meet the foregoing merger requirements. Any determinations the Trustee makes in good faith under the preceding sentence shall not be subject to review, and the Trustee shall be held harmless from any cost or liability as to such determinations;

j. **Conservation of Assets.** To take any action with respect to conserving or realizing upon the value of any asset and with respect to foreclosures, reorganizations or other changes affecting such asset which an individual owner of such asset could take; and to collect, pay, contest, arbitrate, compromise or abandon claims of or against any trust;

k. **Delegation and Agents.** To employ and compensate separately any brokers, attorneys, auditors, depositories, real estate managers, investment advisors, appraisers, auctioneers and other agents (including any fiduciary and any firm with which a fiduciary is associated without reducing compensation in any capacity), with or without discretionary powers; to vote any stocks or other securities in person or by proxy; to hold any asset in bearer form or in the name of a nominee without disclosure of any fiduciary relationship; and to delegate to voting trustees, bondholder's committees, any beneficiary or other person any powers which the Trustee may deem it desirable to delegate for the best interest of any trust;

## MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

l. **Dealing with Fiduciaries.** To enter into any authorized transaction with the fiduciary of any other trust or estate, although such fiduciary is also a Trustee;

m. **Distributions and Allocations.** To make any distribution or allocation in cash or in kind; to distribute or allocate different kinds or disproportionate shares of assets or undivided interests in assets; and to determine the value of any asset; and

n. **Substitute Trustee.** To appoint any qualified individual or qualified corporation as the Substitute Trustee with respect to any asset situated in any jurisdiction in which the Trustee is, at any time, unwilling or unable to act, which Substitute Trustee shall have such powers and duties as are delegated to it or imposed upon it by the Trustee; and at any time to remove any Substitute Trustee and appoint another, or terminate the substitute trusteeship.

2. **Residence.** A "Residence" is a residence (or undivided fractional interest therein) held by the Residence Trust, including any appurtenant structures used for residential purposes and any land adjacent to the residence not exceeding an amount reasonably appropriate for residential purposes, taking into account the residence's size and location, but shall not include any personal property.

3. **Personal Residence.** A "Personal Residence" is a Residence (a) that is either (1) my "principal residence," as that term is defined in section 1034 of the Code, or (2) one other "residence" of mine, as that term is defined in section 280A(d)(1) of the Code without regard to section 280A(d)(2) of the Code, and (b) whose primary use is as a residence when occupied by me. Notwithstanding the preceding sentence, if a Residence is my principal residence, it will not fail to be a Personal Resi dence merely because a portion of the Residence is used in an activity meeting the requirements of section 280A(c)(1) or (4) of the Code, provided that such use is secondary to use of the Residence as a residence.

4. **Qualified Residence.** A "Qualified Residence" is a Residence that is either used as my Personal Residence or held for use as my Personal Residence. For purposes of this Section, a Residence is used as my Personal Residence only if, when occupied by me, its primary use is as a residence, and, when not occupied by me, its primary use is not other than as a residence. For purposes of this Section, a Residence is held for use as my Personal Residence so long as it is not occupied (as that term is used in the Regulations under section 2702 of the Code) by any person other than me, my spouse or a dependent of mine and is available at all times for use by me as a Personal Residence.

5. **Insurance for Trust Property.** I shall have the right, but, except as otherwise provided, not the obligation, to insure any trust property while it is held by the Residence Trust, provided that all proceeds of such insurance are payable to such trust.

6. **Trust Expenses and Taxes.** Except as otherwise provided, the Trustee shall pay (a) all reasonable administration expenses of each trust, including reasonable compensation for its services, and (b) all taxes imposed upon such trust.

7. **Undistributed Income.** Except as otherwise provided, any income collected after the last income distribution date but undistributed at the time of the death of any income beneficiary, together with any accrued income, shall be held and

# MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

accounted for, or distributed, as income attributable to the next succeeding beneficiary or beneficiaries as their interests may appear.

8. **Payments to Beneficiaries Under a Disability.** The Trustee, in its discretion, may distribute any income or principal which is distributable to any person who is under a legal disability or is, although not adjudicated incompetent, in the opinion of the Trustee unable properly to administer such income or principal for any reason, in any one or more of the following ways; (a) directly to such beneficiary; (b) to the personal representative of such beneficiary or to a Custodian for such beneficiary under any applicable Uniform Transfers or Gifts to Minors Act; (c) to any person standing *in loco parentis* to such beneficiary; (d) to any agent under a power of attorney created by such beneficiary; and (e) by the Trustee expending such income or principal directly for the benefit of such beneficiary.

9. **Spendthrift Provision.** No interest of any beneficiary shall be transferrable or assignable by anticipation, either by the voluntary or involuntary act of such beneficiary or by operation of law, or be liable for any debts or liabilities (including liabilities for alimony or child support) of such beneficiary. This Section shall not limit the exercise of any power of appointment.

10. **Trust to Terminate Within Rule Against Perpetu ities.** Notwithstanding any other provision, each trust shall terminate, if not sooner terminated, at the expiration of 21 years after the death of the last survivor of me, my spouse, such of my descendants as are alive on the date of this instrument, and any individual named to be a primary beneficiary who is alive on the date of this instrument, and the entire principal and undistributed income of each such trust shall thereupon vest in and be distributed to its primary beneficiary, or if none, to my then living descendants in shares *per stirpes*.

11. **Termination of Small Trusts.** Notwithstanding any other provision, if at any time after my death the value of any trust as determined by the Trustee is less than $50,000.00, and if the primary beneficiary is not then acting as Trustee, the Trustee may in its discretion terminate such trust and distribute the entire principal and undistributed income of such trust to its primary beneficiary, or if none, to my then living descendants in shares *per stirpes*.

12. **Waiver of Court Supervision.** The Trustee shall not be required (a) to give bond or surety, (b) to be appointed by any court or (c) to account to any court in the absence of a demand for an accounting by a beneficiary entitled thereto.

13. **Duty of Person Dealing With Trustee.** No person paying any money or delivering any property to, or at the direction of, the Trustee shall be required to see to its application and no person dealing with the Trustee shall be required to inquire into the terms of this instrument.

14. **Annual Accounting.** At least annually the Trustee shall furnish an account showing the receipts, disbursements and inventory of each trust (a) to the income beneficiaries of such trust and (b) upon request (or in the Trustee's discretion without a request) to those persons who would have taken the remainder interest in such trust if such trust had terminated on the last day of the period covered by such account.

## MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

15. **Resignation of Trustee.** Any Trustee of any Trust may resign by 30 days' written notice to the other then acting Trustee or Trustees, if any, to the next designated successor Trustee, if any, and to the income beneficiaries of such trust.

16. **Qualified Trustee.** Except as otherwise provided, a "qualified individual" means any individual (other than me) who is 25 years of age or older, and a "qualified corporation" means any bank, trust company or other corporate entity that is authorized to act as Trustee.

17. **Approval of Accounts.** The primary beneficiary of any trust, if any, otherwise a majority of the income beneficiaries of such trust, may approve the accounts of any Trustee of such trust and may give a release to such Trustee with respect to such accounts. The power to approve such accounts does not include the power to enlarge or shift the beneficial interest of any beneficiary. Any such release shall be binding upon all persons with the same effect as though such accounts were approved by a court of competent jurisdiction. No successor Trustee shall have any responsibility to inquire into or be liable for any act or omission of any predecessor.

18. **Beneficiary Under a Disability.** The personal representative of the estate of a beneficiary under a legal disability, if any, otherwise a spouse, if any, a parent, if any, or a guardian of the person of such a beneficiary for whose estate no representative has been appointed, may act for such beneficiary in the order named in receiving and approving any account of a Trustee, releasing a Trustee with respect to such account, appointing a successor Trustee, directing the Trustee of the Family Trust to sell any interest in a residence and designating a substitute residence, and executing any receipt and receiving any notice.

19. **Control.** Except as otherwise provided, whenever more than one Trustee is acting, a majority of the Trustees qualified to participate in an action or decision of the Trustees shall control. Any Trustee who is not qualified to participate in or dissents from such action or decision shall not be liable therefor.

20. **Delegation by Individual Trustee.** Any individual Trustee may at any time by notice in writing delegate to any other Trustee any or all of the powers herein granted to such individual Trustee. Any such delegation may be for a definite or indefinite period and may be revoked by notice in writing. Any person may rely on the written statement of any Trustee with respect to any such delegation.

21. **Selection of Assets.** I request but do not require that selection of assets for any distribution or allocation be made in such manner as appears reasonably likely to minimize income taxes imposed by reason of such distribution or allocation or any subsequent sale or exchange, unless another manner of selection is specifically directed or appears advisable. In determining whether another manner of selection appears advisable, equality of treatment of beneficiaries as to the income tax bases of assets distributed or allocated may be disregarded. No adjustment shall be made between principal and income or in the relative interests of the beneficiaries to compensate for any such selection.

22. **No Advancements.** Unless specifically provided otherwise, no distribution by the Trustee shall be treated as an advancement.

23. **Exclusion of Interested Fiduciary.** Notwithstanding any other provision, an individual fiduciary (a) shall have no incident of ownership or power or

MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

discretion with respect to any policy of insurance upon such fiduciary's life, (b) shall have no discretionary power to allocate or distribute assets to the extent that such would discharge such fiduciary's legal obligation to support any beneficiary, (c) shall, if such fiduciary has a beneficial interest in a trust, have no discretionary power to allocate or distribute assets of such trust, directly or indirectly, to or for any beneficiary (including such fiduciary) unless necessary for such beneficiary's support in reasonable comfort, health care or education at any level, considering all factors such fiduciary deems pertinent, and (d) shall have no other power or discretion that would be deemed a general power of appointment under section 2041 of the Code unless such fiduciary has such a power in other than a fiduciary capacity.

24. **Generation-Skipping Restrictions.** Notwithstanding any other provision, the Trustee shall make no discretionary distribution of income or principal of any trust, and no lifetime power of appointment over such trust may be exercised in any manner, which would reduce or discharge the legal obligation of any person (the "Obligor") to support any individual if the Obligor is assigned to a generation below the transferor by section 2651 of the Code, unless the Obligor or another individual assigned to the same generation as such Obligor otherwise has or at any time has had an interest in such trust as defined in section 2652(c)(1) of the Code.

25. **Incapacity.** A person shall be considered incapacitated if under a legal disability or, through illness, age or other cause, unable to give reasoned consideration to financial matters. The existence of any such inability may be determined from time to time by the principal physician then attending to such person's care, and any person may rely upon written notice of such determination. An incapacitated Trustee is unable to act.

26. **Per Stirpes.** Whenever assets are to be allocated for the descendants of a person in shares *per stirpes,* such assets shall be divided into equal shares, one such share for each then living child of such person and one such share for each deceased child of such person who has descendants then living. Any such deceased child's share shall then be allocated for such child's descendants in shares *per stirpes* in accordance with the preceding sentence.

27. **Income Beneficiary.** An "income beneficiary" means a person to whom or for whose benefit any part or all of the income of such trust may be currently distributed.

28. **Spouse.** The "spouse" of any person other than me means the individual legally married to, and not legally separated from, such person on the date then in question or on the date of the death of such person.

29. **Primary Beneficiary.** I shall be the "primary beneficiary" of the Residence Trust and of any Annuity Trust established hereunder.

30. **Code and Regulations.** References to sections of the Code refer to the Internal Revenue Code of 1986, as heretofore or hereafter amended, and include corresponding provisions of subsequent federal tax laws. References to the Regulations refer to the applicable Treasury Regulations promulgated with respect to the Internal Revenue Code of 1986, as here tofore or hereafter amended, and include corresponding provisions of subsequent Treasury Regulations.

31. **Governing Law.** The trust shall be construed in accordance with the laws of California, and all questions concerning the rights and duties of the parties and

MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

beneficiaries, or concerning compliance with the provisions of such trust, shall be resolved in accordance with the laws of California.

32. **Lapse of Gifts.** I intend that no statute or other rule of law governing lapsed legacies apply to any gift under this instrument.


ARTICLE VII. Miscellaneous



1. **Power to Amend or Reform.** I intend this instrument to comply with all of the requirements of a Qualified Personal Residence Trust and for any Annuity Trust to comply with all of the requirements of a Qualified Annuity Interest as those terms are defined in the Regulations under section 2702 of the Code. I therefore direct the Trustee to amend or to institute a judicial proceeding to reform the terms of any trust created hereunder as may be required to comply with such requirements.

2. **Withholding Trusts.** Notwithstanding any other provision, any assets distributable to a person who has not attained age 25 or who is legally disabled shall immediately vest in such person, but the Trustee shall retain such assets (or sell any part or all and retain the proceeds) as a separate trust for such person (the "primary beneficiary") subject to the terms of this Section.


(a) **Distributions.** The Trustee may distribute to or for the benefit of the primary beneficiary any part or all of the net income and principal of such trust as the Trustee from time to time considers advisable for such beneficiary's support in reasonable comfort, health care and education at any level. In exercising this discretion, the Trustee may consider the accustomed manner of living from time to time of such primary beneficiary and any other factors the Trustee deems pertinent. Any undistributed net income shall be added to principal at least annually.

(b) **Termination.** At such time as the primary beneficiary has attained age 25 and is not legally disabled, the Trustee shall distribute the remaining assets of such trust to such beneficiary. If the primary beneficiary dies before such distribution, the Trustee shall distribute the remaining assets of such trust to the primary beneficiary's estate.

3. **Child and Descendant.** A "child" or "descendant" means a child or descendant born of a lawful marriage; any person lawfully adopted prior to attaining age 21 shall be deemed "born of a lawful marriage." Except where distribution is directed to descendants " *per stirpes,*" the word "descendants" includes descendants of every degree whether or not a parent or more remote ancestor of a descendant is also living.

## MAGDA THOMASSIAN QUALIFIED PERSONAL RESIDENCE TRUST

     Signed and agreed to on **March 11, 2013**, and the Trustee acknowledges acceptance of the Trust and receipt of the assets described in the attached Schedule.

_____
**Magda Thomassian,** Grantor

_____
**Talin Thomassian**, Trustee

# Acknowledgment

State of California       )
                             ) ss
County of Los Angeles  )

     On _____, **2013**, before me_____, Notary Public, personally appeared **MAGDA THOMASSIAN** and **TALIN THOMASSIAN**, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.
     I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____

# EXHIBIT "C"



**This page is part of your document - DO NOT DISCARD**

## 20130900457





**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/17/13 AT 03:09PM**

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 25.00 |



**L E A D S H E E T**



201306170620049

00007876130

**004939288**

**SEQ:**
**01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E464723

**RECORDING REQUESTED BY**

Mike V. Thomassian

**MAIL DEED & TAX STATEMENT TO THE
FOLLOWING PERSON NAMED BELOW AT
THE FOLOOWING ADDRESS:**

**WHEN RECORDED MAIL TO**

NAME  Mike V. Thomassian

MAILING   5725 Ocean View Blvd.
ADDRESS

CITY, STATE  La Canada, CA
ZIP CODE   91011

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# T I T L E(S)
## QUIT CLAIM DEED

Legal
Solutions    LS-201
Plus

RECORDING REQUESTED BY

Mike V. Thomassian

**MAIL DEED & TAX STATEMENT TO THE
FOLLOWING PERSON NAMED BELOW AT
THE FOLOOWING ADDRESS:**

WHEN RECORDED MAIL TO

NAME   Mike V. Thomassian

MAILING   5725 Ocean View Blvd.
ADDRESS

CITY, STATE   La Canada, CA
ZIP CODE   91011

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# T I T L E(S)
## QUIT CLAIM DEED

DOCUMENTARY TRANSFER TAX $ NONE
"Transfer under R&T 11930"

Mike V. Thomassian, DECLARANT

For no valuable consideratin, **Mike V. Thomassian**, a married man, does hereby **REMISE, RELEASE**
and **FOREVER QUIT CLAIM** his **fifty percent (50%)** ownership in the following described property to
**Mike V. Thomassian Qulaified Personal Residence Trust:**

LOT 53 OF TRACT NO. 24112 IN THE CITY OF LA CANADA FLINTRIDGE, COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 677, PAGES 77 TO 79 INCLUSIVE OF MAPS,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Commonly Known As: 5725 Ocean View Blvd., La Canada, CA 91011    APN: 5870-034-007

Grantor is transferring the interest into a trust, exempt from Documentary Transfer Tax under
State R & T 11930.

Dated: **March 11, 2013**

Mike V. Thomassain

STATE OF CALIFORNIA            )
COUNTY OF LOS ANGELES          )

On **March 11, 2013**, before me, **S. Motallebi**, a Notary Public, personally appeared **Mike V.
Thomassian**, who proved to me on the basis of satisfactory evidence to be the person whose name
is subscribed to the within instrument and acknowledged to me that he executed the same in his
authorized capacity, and that by his signature on the instrument the person, or the entity upon
behalf of which the person acted, executed the instrument.

I certify under the PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official Seal.

S. MOTALLEBI
Commission # 1853653
Notary Public - California
Los Angeles County
My Comm. Expires Jul 9, 2013

Mail Tax Information As Directed Above

Legal
Solutions   LS-201
& Plus

# EXHIBIT "D"



**This page is part of your document - DO NOT DISCARD**



## 20130900458



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/17/13 AT 03:09PM**

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 25.00 |



**L E A D S H E E T**



**201306170620049**

**00007876131**



**004939288**

**SEQ:**
**02**

DAR - Counter (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**

E464723

**RECORDING REQUESTED BY**

Magda Thomassian

**MAIL DEED & TAX STATEMENT TO THE
FOLLOWING PERSON NAMED BELOW AT
THE FOLOOWING ADDRESS:**

**WHEN RECORDED MAIL TO**

NAME  Magda Thomassian

MAILING   5725 Ocean View Blvd.
ADDRESS

CITY, STATE  La Canada, CA
ZIP CODE   91011

**SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE**

# T I T L E(S)
## QUIT CLAIM DEED

Legal
Solutions  LS-201
Plus

**RECORDING REQUESTED BY**

Magda Thomassian

**MAIL DEED & TAX STATEMENT TO THE
FOLLOWING PERSON NAMED BELOW AT
THE FOLOOWING ADDRESS:**

**WHEN RECORDED MAIL TO**

NAME  Magda Thomassian

MAILING  5725 Ocean View Blvd.
ADDRESS

CITY, STATE  La Canada, CA
ZIP CODE  91011

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# T I T L E(S)

## QUIT CLAIM DEED

DOCUMENTARY TRANSFER TAX $ NONE
"Transfer under R&T 11930"

Magda Thomassian, DECLARANT

For no valuable consideratin, **Magda Thomassian**, a married woman, does hereby **REMISE, RELEASE**
and **FOREVER QUIT CLAIM** her **fifty percent (50%)** ownership in the following described property to
**Magda Thomassian Qulaified Personal Residence Trust:**

LOT 53 OF TRACT NO. 24112 IN THE CITY OF LA CANADA FLINTRIDGE, COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 677, PAGES 77 TO 79 INCLUSIVE OF MAPS,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Commonly Known As: 5725 Ocean View Blvd., La Canada, CA 91011      APN: 5870-034-007

Grantor is transferring the interest into a trust, exempt from Documentary Transfer Tax under
**State R & T 11930.**

Dated: **March 11, 2013**

Magda Thomassian

STATE OF CALIFORNIA         )
COUNTY OF LOS ANGELES        )

On **March 11, 2013,** before me, S. Motallebi, a Notary Public, personally appeared **Magda
Thomassian,** who proved to me on the basis of satisfactory evidence to be the person whose name
is subscribed to the within instrument and acknowledged to me that she executed the same in her
authorized capacity, and that by her signature on the instrument the person, or the entity upon
behalf of which the person acted, executed the instrument.

I certify under the PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official Seal.

S. MOTALLEBI
Commission # 1853653
Notary Public - California
Los Angeles County
My Comm. Expires Jul 9, 2013

Mail Tax Information As Directed Above

Legal
Solutions   LS-201
Plus

FORM B104  (08/07)                                                                    2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>HOWARD M. EHRENBERG, Chapter 7 Trustee | DEFENDANTS<br>ARA THOMASSIAN, as Trustee of MV Thomassian QPRT; and<br>TALIN THOMASSIAN, as Trustee of M. Thomassian QPRT |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Steven T. Gubner, Talin Keshishian, Travis Daniels &<br>Ezra Brutzkus Gubner LLP, 21650 Oxnard Street, Suite 500<br>Woodland Hills, CA  91367   Tel: 818-827-9000 | ATTORNEYS (If Known)<br>Shahin Motallebi          Tel:  310-268-1685<br>Law Offices of Shahin Motallebi<br>1575 Westwood Blvd., Suie 201, Los Angeles, CA 90024 |
| PARTY (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☑ Trustee | PARTY (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☑ Other<br>☐ Trustee |

| CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)<br>1. Avoidance of fraudulent transfers against Ara and Talin Thomassian pursuant to 11 U.S.C. Sections 548(a)(1)(A) and (B);<br>2. Recovery of avoided transfers against Ara and Talin Thomassian pursuant to 11 U.S.C. Sections 550(a)(1) and (2); and<br>3. Claim disallowance against Ara and TalinThomassian pursuant to 11 U.S.C. Section 502. |
|---|

| NATURE OF SUIT<br>(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |
|---|

**FRBP 7001(1) – Recovery of Money/Property**

☐ 11-Recovery of money/property - §542 turnover of property

☐ 12-Recovery of money/property - §547 preference

1 13-Recovery of money/property - §548 fraudulent transfer

☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**

☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**

☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☐ 62-Dischargeability - §523(a)(2), false pretenses, false
      representation, actual fraud

☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement,
      larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**

☐ 61-Dischargeability - §523(a)(5), domestic support

☐ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
      (other than domestic support)

☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**

☐ 71-Injunctive relief – imposition of stay

☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**

☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.

☐ 02-Other (e.g. other actions that would have been brought in state
      court if unrelated to bankruptcy case)

| ☐   Check if this case involves a substantive issue of state law | ☐   Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐   Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

Avoidance of transfers of residence to Debtors' individual Qualified Personal Residence Trusts; recover title to residence or recover equivalent value of transfer;
disallowance of any and all of Ara/Talin's claims against the Trustee or the Debtors' estate; and costs incurred as a result of this lawsuit.

FORM B104 (08/07), page 2                                              2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| **NAME OF DEBTOR**<br>MIKE VAHE THOMASSIAN and MAGDA THOMASSIAN | **BANKRUPTCY CASE NO.**<br>2:14-bk-24788BR | |
| **DISTRICT IN WHICH CASE IS PENDING**<br>CENTRAL | **DIVISIONAL OFFICE**<br>LOS ANGELES DIVISION | **NAME OF JUDGE**<br>BARRY RUSSELL |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)** | | |
| **DATE**<br>2/12/15 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>TRAVIS M. DANIELS | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER – Bar No. 156593<br>TALIN KESHISHIAN – Bar No. 201830<br>TRAVIS M. DANIELS – Bar No. 295855<br>EZRA BRUTZKUS GUBNER LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA  91367<br>Telephone:  818-827-9000<br>Facsimile:  818-827-9099<br>Emails:    sgubner@ebg-law.com<br>              tkeshishian@ebg-law.com<br>              tdaniels@ebg-law.com<br>*Attorney for Plaintiff* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>MIKE VAHE THOMASSIAN and<br>MAGDA THOMASSIAN,<br><br><div align="right">Debtor(s).</div> | CASE NO.: 2:14-bk-24788-BR<br><br>CHAPTER: 7<br><br>ADVERSARY NUMBER: |
|---|---|
| HOWARD M. EHRENBERG, Chapter 7 Trustee,<br><br><div align="right">Plaintiff(s)</div><div align="center">Versus</div>ARA THOMASSIAN as Trustee of the Mike V. Thomassian Qualified Personal Residence Trust; and TALIN THOMASSIAN as Trustee of the Magda Thomassian Qualified Personal Residence Trust,<br><div align="right">Defendant(s)</div> | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING  [LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

> **Hearing Date:** _____
> **Time:** _____
> **Courtroom:** _____
>
> **Place:**
> ☐ 255 East Temple Street, Los Angeles, CA 90012
> ☐ 3420 Twelfth Street, Riverside, CA 92501
> ☐ 411 West Fourth Street, Santa Ana, CA 92701
> ☐ 1415 State Street, Santa Barbara, CA 93101
> ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2012                        Page 1                   **F 7004-1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS. REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report.  The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
Deputy Clerk

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_June 2012_                                    Page 2                          **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:



A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:



☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.



☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.



☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____     _____
*Date*                          *Printed Name*                                              *Signature*

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    Page 3                                    **F 7004-1.SUMMONS.ADV.PROC**